_____

No. 96-1336
_____

Robert E. Marler,                    *
                                     *
     Plaintiff - Appellant,          *
                                     *      Appeal from the United States
     v.                              *      District Court for the Western
                                     *      District of Missouri.
Missouri State Board of              *
Optometry; Michael Pier;             *
Lynette Lui; William F. Kiefer;      *
Jerry W. Long; Melanie               *
Crandall; James E. Bureman;          *
V. E. Falkenhain, also known as      *
Bud Falkenhain; Karen Rose;          *
Sharlene Rimiller; Mary Jean         *
Wilhite; Lloyd Dixon; Vickie         *
Young; Gerald Birkmann,              *
                                     *
     Defendants - Appellees.         *

_____

                    Submitted:   September 9, 1996

                    Filed:      December 19, 1996
                            _____

Before WOLLMAN, HENLEY, and HANSEN, Circuit Judges.
                            _____

HANSEN, Circuit Judge.

     Robert E. Marler appeals the district court's[1] grant of
summary judgment in favor of the defendants in this 42 U.S.C.
§ 1983 action.  Marler filed this lawsuit against the Missouri
State Board of Optometry and several of its members in both their

_____

     [1]The Honorable William A. Knox, United States Magistrate
Judge for the Western District of Missouri, to whom the case was
referred for final disposition by consent of the parties pursuant
to 28 U.S.C. § 636(c).

individual and official capacities,[2] alleging that they violated his procedural and substantive due process rights guaranteed under the Fourteenth Amendment.  The district court determined that the Board's conduct did not violate Marler's constitutional rights.  We affirm.

I.

Marler's claims arise out of a series of disciplinary actions taken by the Board against his license to practice optometry in the state of Missouri.  At some point prior to June 4, 1987, the Board filed a complaint with the Missouri Administrative Hearing Commission (AHC), alleging that Marler had engaged in conduct that warranted disciplinary action against him.  The Board filed this complaint with the AHC in compliance with section 336.110 of the Missouri Revised Statutes, a provision governing the operation of the State Board of Optometry.  On June 4, 1987, after a full trial-type hearing, the AHC determined that Marler was subject to discipline on several of the counts in the Board's complaint.[3]  On August 6, 1987, pursuant to the AHC finding, the Board revoked Marler's license to practice optometry.  Both the Board and Marler appealed the June 4 AHC determination to the Missouri Circuit Court of Cole County, as provided for under Missouri law.  See Mo. Rev. Stat. § 621.145 (1988).

---

[2]We refer to the defendants collectively as "the Board."

[3]Specifically, the AHC found that Marler could be disciplined for misleading advertising, gross negligence, violating professional trust, and misrepresenting the availability of financing.  The AHC did not find cause for discipline on the remaining counts in the Board's complaint.

While these appeals were pending, in January of 1990, Marler asked the Board to reinstate his license to practice optometry.[4] The Board denied Marler's request, and on June 18, 1991, Marler appealed the Board's denial to the AHC, alleging that the Board wrongfully refused to reinstate his license. Approximately one month later, on July 31, 1991, Marler voluntarily entered into a settlement agreement with the Board in which he agreed to dismiss both his recent appeal to the AHC and his earlier appeal to the Missouri Circuit Court of Cole County. In exchange, the Board agreed to dismiss its earlier appeal to the Missouri Circuit Court and to issue Marler a new license subject to several probationary conditions. On August 1, 1991, the AHC adopted the terms of the settlement agreement as its findings of fact and conclusions of law.

Almost two years later, on May 19, 1993, the Board served Marler with both a complaint alleging he had violated the terms of his probation and a notice informing him of his opportunity to challenge the validity of the charges at an upcoming hearing before the Board. The Board did not file the complaint with the AHC, because one provision of the 1991 settlement agreement empowered the Board to pursue additional disciplinary action against Marler's license solely upon its own determination that Marler had violated his probation.

Marler sought a preliminary writ of prohibition from the Circuit Court of Cole County preventing the Board from holding such a hearing on the question of his alleged violation of his probation. The court initially granted the writ finding that the

---

[4]The Missouri Court of Appeals later determined that Marler was actually applying for a new license at this time, not a reinstatement, because his previous license had been effectively terminated when the Board revoked it on August 6, 1987. State ex rel. Marler v. State Bd. of Optometry, 898 S.W.2d 559, 563 (Mo. Ct. App. 1994).

Board must obtain a determination from the AHC that Marler is subject to discipline before initiating disciplinary proceedings against him.  On March 30, 1994, however, the Circuit Court quashed its preliminary writ.  Marler appealed this decision to the Missouri Court of Appeals.

During the pendency of the appeal, the Missouri Court of Appeals did not prevent the Board from holding a hearing regarding Marler's probation.  Consequently, on October 6, 1994, the Board held a hearing to determine whether Marler had in fact violated the terms of his probation.  Marler was present and was represented by counsel.  The Board held its determination in abeyance, however, pending the decision of the Missouri Court of Appeals.

On November 29, 1994, the Missouri Court of Appeals decided that under section 336.110 of the Missouri Revised Statutes, the Board did not have authority to subject Marler's new license to the probationary terms of the 1991 settlement agreement without first having the AHC's independent determination that cause existed to discipline his license.  Marler, 898 S.W.2d at 562.  Because the Board lacked the authority to place Marler's license on probation in the first place, the court then determined that the Board also lacked the power to begin the disciplinary proceedings that were based on Marler's alleged violations of that probation.  Id.

In July of 1995, Marler filed this section 1983 claim alleging that the Board's actions violated his procedural and substantive due process rights guaranteed under the Fourteenth Amendment. After reviewing the evidence in a light most favorable to Marler, the district court determined that Marler received adequate notice and had a meaningful opportunity to be heard both prior to and after the deprivation of his property interest in his optometry license.  Consequently, the court found that the Board had not

-4-

committed a constitutional violation and thus granted summary judgment in its favor.  Marler appeals.

## II.

In a section 1983 action, a plaintiff must prove that persons acting under color of state law deprived him "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983 (1994).  In part, the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Marler claims the district court erred in concluding that he is not entitled to relief under section 1983 based on his allegations that the Board violated his Fourteenth Amendment procedural and substantive due process rights.

We review the district court's grant of summary judgment de novo.  See Zakrzewski v. Fox, 87 F.3d 1011, 1012 (8th Cir. 1996).  Summary judgment is appropriate if the record, when viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## A.

To establish a procedural due process violation, a plaintiff must first demonstrate that he has a protected liberty or property interest at stake.  Batra v. Board of Regents of Univ. of Neb., 79 F.3d 717, 720 (8th Cir. 1996).  Secondly, a plaintiff must prove that he was deprived of such an interest without due process of law.  Zinermon v. Burch, 494 U.S. 113, 125 (1990).  Under Missouri law, Marler had a property interest in his optometry license.  See Larocca v. State Bd. of Registration for Healing Arts, 897 S.W.2d

37, 42 (Mo. Ct. App. 1995). While we recognize that he was, at times, deprived of this interest, we do not believe he was deprived of it without due process of law.

Due process requires adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Post v. Harper, 980 F.2d 491, 493 (8th Cir. 1992) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). We agree with the district court's conclusion that Marler received meaningful opportunities to be heard both prior to and after the deprivation of his property interest.[5]

Our previous recitation of the facts reveals the myriad procedural protections afforded to Marler regarding his optometry license. Missouri law provides for extensive administrative hearings before, as well as judicial review of, the Board's disciplinary determinations. See, e.g., Mo. Rev. Stat. § 336.110 (1989); id. § 536.100 (1988); id. § 621.145 (1988). The timing and substance of these measures provided Marler with adequate opportunities to be heard throughout his course of dealings with the Board. Prior to the Board's initial revocation of Marler's

---

[5]Because we believe that Marler received adequate pre-deprivation opportunities to be heard, Marler's contentions in his brief that the Parratt-Hudson doctrine does not apply are immaterial. While the Due Process Clause typically requires "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest," Boddie v. Connecticut, 401 U.S. 371, 379 (1971), the Parratt-Hudson doctrine generally excuses a state actor's failure to provide a person with a pre-deprivation hearing where a state actor's random and unauthorized conduct caused a deprivation of a property or liberty interest, as long as the state provides adequate post-deprivation remedies. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 541-43 (1981). Here, the Board did not fail to provide Marler with pre-deprivation hearings so there is no need to rely on the Parratt-Hudson doctrine in order to find that the plaintiff received due process of law.

license on August 6, 1987, Marler received a full trial-type hearing in front of the AHC. After the Board revoked his license, Marler appealed the decision to the Missouri Circuit Court, as provided for under Missouri Law. See id. § 621.145.

With respect to the 1991 settlement agreement under which Marler received an optometrist's license subject to probation, Marler had notice of the probationary terms before they were imposed, and he consented to those conditions. If he objected to the probation, he could have rejected the settlement offer and continued to pursue both his complaint with the AHC as well as his appeal in the Missouri Circuit Court. These avenues afforded Marler adequate procedural protection. The fact that Marler did not actually utilize these procedures does not mean that he was denied due process, because the Due Process Clause requires merely a meaningful opportunity to be heard. See Boddie, 401 U.S. at 378.

Regarding the Board's initiation of disciplinary proceedings against Marler in 1993 for allegedly violating his probation, once again, Marler received notice of the charges and had an opportunity to challenge them at the hearing on October 6, 1994. Moreover, the Board did not actually deprive Marler of any property right in this instance, because it never imposed any further discipline on Marler due to the intervening decision of the Missouri Court of Appeals in State ex. rel. Marler v. State Bd. of Optometry, 898 S.W.2d 559 (Mo. Ct. App. 1994).

Admittedly, the Missouri Court of Appeals determined that the Board violated Missouri law by failing to get the AHC's approval both before placing probationary conditions on Marler's new license under the terms of the 1991 settlement agreement and before instituting disciplinary action against Marler for his alleged violations of his probation in 1993. Id. at 562. We have stated

-7-

many times, however, that "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Although the Board failed to comply with some of the technical requirements of Missouri administrative law, we find that its conduct in this case does not amount to a federal procedural due process violation. As detailed above, the State provided Marler with numerous pre- and post-deprivation protections. Consequently, Marler's procedural due process claim cannot succeed on this ground. See Zinermon, 494 U.S. at 126; Zar v. South Dakota Bd. of Exam'rs of Psychologists, 976 F.2d 459, 465 (8th Cir. 1992).

Marler also claims that he was denied due process on the basis that certain members of the Board were biased against him. Marler first contends that one of the Board members was biased because he was in direct economic competition with Marler. While the Due Process Clause requires a tribunal to be fair and impartial, Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980), the Supreme Court has stated that an adjudicator's slight pecuniary interest in the outcome of the proceedings does not in itself violate due process. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825-26 (1986). We find that the economic interest of the Board member who was an independent optometrist in the same town as Marler to be minimal. The facts of this case reveal that Marler was an optometrist at the Wal-Mart Vision Center. We believe that the Wal-Mart Vision Center would continue to employ an optometrist and remain in competition with the Board member, regardless of the status of Marler's license. Under these circumstances, we believe that the Board member had at most a slight pecuniary interest in the outcome of the proceedings. This interest did not jeopardize Marler's right to an impartial tribunal.

Marler also submits unsupported, blanket allegations that three other Board members acted out of personal spite and

animosity.  We begin with a presumption that decision-makers are honest and impartial.  See Withrow v. Larkin, 421 U.S. 35, 47 (1975).  Marler offers no evidence of vindictive behavior beyond his mere statements of belief that the Board members acted in this manner.  His statements not only fail to overcome the presumption of the tribunal's integrity, but also fail to meet the standards of Rule 56(e).[6]  Consequently, Marler's beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment.  See Gibb v. World Book, Inc., 29 F.3d 411, 415 (8th Cir. 1994).  Without any evidence to the contrary, we find that Marler's right to a fair adjudicator was unimpaired.

## B.

In addition to claiming that he did not receive adequate procedural protections, Marler alleges that the Board's treatment of him constituted a substantive due process violation.  Specifically, Marler bases his substantive due process claim on (1) the Board's alleged bias against him, (2) the Board's issuance of his license subject to probation in the 1991 settlement, and (3) the Board's initiation of disciplinary proceedings against him in 1993 for his alleged violation of his probation.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty."  United States v. Salerno, 481 U.S. 739, 746 (1986) (internal quotations and citations omitted).  "The theory of substantive due process is properly reserved for the truly egregious and extraordinary cases,

---

[6]"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

and it proscribes certain government actions regardless of the fairness of the procedures used to implement them." Zakrzewski, 87 F.3d at 1014. Marler maintains that the Board's conduct is the kind of egregious government behavior that violates the substantive aspect of the Due Process Clause.[7] We disagree. After reviewing the record, we conclude that the Board's conduct in no way violated Marler's substantive due process rights.

Regarding Marler's claim that the Board was biased against him, we have already reached the opposite conclusion, and Marler's substantive due process claim cannot succeed on this foundation. Marler's reference to his probation and to the Board's attempt to enforce the terms of that probation once again constitute an attempt to establish a constitutional violation based merely on a violation of state law. As explained earlier, according to the Missouri Court of Appeals, the Board did in fact violate Missouri law when it subjected Marler's new license to probation in 1991 and when it began disciplinary proceedings to enforce that probation in 1993. See Marler, 898 S.W.2d at 562. However, a violation of state law alone does not qualify as a federal constitutional violation. See Bagley, 5 F.3d at 328. Moreover, Marler consented to all of the probationary terms in the 1991 settlement agreement, and the Board initiated the disciplinary proceedings in 1993 with a good faith belief that it had the authority to do so. These actions do not approach the type of outrageous official conduct that would shock one's conscience. Marler's substantive due process claim fails.

After reviewing the evidence in a light most favorable towards Marler, we conclude that the Board did not infringe on Marler's

---

[7]Marler does not argue that his interest in his license to practice optometry is a fundamental right. Therefore, our inquiry is limited to whether the Board's conduct shocks one's conscience.

-10-

procedural or substantive due process rights. Thus, it is unnecessary for us to address the Board's alternative defenses, and we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-