# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2120

_____

Gregory M. Kloch, M.D.,       *
       *
      Plaintiff/Appellee,     *
       *
   v.         *
       *
Randy T. Kohl, M.D., Individually, and *
in his Official Capacity; Joseph C. Scott, *
Jr., M.D., Individually, and in his   *
Official Capacity; Arthur A. Weaver,  *
D.O., Individually, and in his Official  *   Appeal from the United States
Capacity; Kathryn Kahla, Individually, *   District Court for the
and in her Official Capacity; John L.  *   District of Nebraska.
Reed, M.D., Individually, and in his  *
Official Capacity; Gordon D. Adams,  *
M.D., Individually, and in his Official *
Capacity; David A. Dryburgh,     *
Individually, and in his Official    *
Capacity; Michael A. Sitorius, M.D.,  *
Individually, and in his Official    *
Capacity; Debra J. Ford, Individually,  *
and in her Official Capacity,     *
       *
      Defendants,      *
       *
Jon C. Bruning, Individually, and in his *
Official Capacity,       *
       *
     Defendant/Appellant,   *

Richard Nelson, Individually, and in his &ast;
Official Capacity; Richard Raymond, &ast;
M.D., Individually, and in his Official &ast;
Capacity; Successors of the Foregoing &ast;
Individuals, The, &ast;
&ast;
   Defendants. &ast;

_____

Submitted: December 14, 2007
Filed: November 3, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In this interlocutory appeal, Nebraska Attorney General Jon Bruning seeks reversal of the district court's decision denying him absolute and qualified immunity in the lawsuit brought under 42 U.S.C. § 1983 by Gregory M. Kloch, M.D., which claimed that provisions of Nebraska's Uniform Licensing Law violated the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. We reverse.

I.

Dr. Kloch is a physician licensed by the state of Nebraska who maintains a family practice in Lexington, Nebraska. Until very recently,[1] physicians in Nebraska

_____

[1]Although the new Uniform Credentialing Act does not become operative until December 1, 2008, Nebraska has not appealed the district court's injunction prohibiting enforcement of the older provisions at issue here. We therefore refer to

were regulated through a statutory scheme known as the Uniform Licensing Law.[2] Neb. Rev. Stat. § 71-101 *et seq.* (2007) (recodified with amendments as the Uniform Credentialing Act, Neb. Rev. Stat. § 38-101 *et seq.* (2008)).  The Uniform Licensing Law distinguished between investigation, prosecution, and adjudication of disciplinary actions against a physician's license; and the law provided for a different agency or official to take responsibility for each part of the disciplinary process.

Investigations were conducted by the Nebraska Department of Health and Human Services Regulation and Licensure (Department of Health).  After completing an investigation, the Department of Health would consult with the Board of Medicine and Surgery (Medical Board), which would make disciplinary recommendations to the Nebraska Attorney General.  Id. § 71-168.01.  The Attorney General would then decide whether or not to prosecute a disciplinary action against the physician. Disciplinary action could include revoking, suspending, or restricting a physician's license; imposing a civil penalty; placing a physician on probation; or issuing a censure.  See Neb. Rev. Stat. §§ 71-155, 71-171.  If the Attorney General decided to prosecute a case, a formal hearing was required, and a neutral official would adjudicate the dispute.  Id. § 71-155(1).

For cases that involved "a technical or insubstantial violation," however, the Attorney General had the option of referring the case back to the Medical Board with instructions to issue a nondisciplinary letter of concern.  Id. § 71-171.01(3).  The provisions of the statute at issue in this case read as follows:

---

the former law in the past tense.

[2]Not long ago we had occasion to examine this same statutory scheme in Buser v. Raymond, 476 F.3d 565 (8th Cir. 2007).  In Buser, we focused on the availability of absolute immunity for a Chief Medical Officer performing an adjudicatory role during disciplinary proceedings.  This case presents us with a different set of legal questions; but the background provided in Buser remains helpful.

**Section 71-171.01.** The [Department of Health] shall provide the Attorney General with a copy of all complaints it receives and advise the Attorney General of investigations it makes which may involve any possible violation of statutes or rules and regulations by the credentialed person. The Attorney General shall then determine which, if any, statutes, rules, or regulations the credentialed person has violated and the appropriate legal action to take. The Attorney General may . . . (3) in cases involving a technical or insubstantial violation, refer the matter to the appropriate professional board for the opportunity to resolve the matter by issuance of a letter of concern or to recommend to the Attorney General that he or she enter into an assurance of compliance with the credentialed person in lieu of filing a petition. Neither a letter of concern nor an assurance of compliance shall constitute discipline against a credentialed person.

**Section 71-171.02.** Upon referral of a matter under section 71-171.01 by the Attorney General, the professional board may: (1) Send to the credentialed person a letter of concern, approved by the Attorney General, which includes a statement of the statute, rule, or regulation in question and a statement advising the credentialed person of the conduct that would violate such statute, rule, or regulation. Such letter shall be signed by the board and shall become a part of the public record of the credentialed person . . . .

In May 2002, Dr. Kloch received notice from the Department of Health that a complaint had been filed against him. Dr. Kloch was informed that an investigation would be conducted, and he was asked to submit his curriculum vitae. Dr. Kloch responded by contacting the investigator assigned to his case but was apparently unable to obtain details about the patient involved or the incident under review.

Three months later, Dr. Kloch received a letter of concern from the Medical Board. The letter explained that Dr. Kloch had been investigated for failing to keep proper medical records on a patient who had received emergency treatment in 2001. It further advised Dr. Kloch that failure to adequately maintain records was a form of unprofessional conduct for which a physician's license could be disciplined. The

-4-

letter detailed the Medical Board's findings—stating, for instance, that Dr. Kloch had erroneously recorded that the patient "did not have a palpable pulse," and "documented that the surgeon . . . , rather than the patient, had undergone a thoracotomy." The letter concluded by stating: "Please accept this Letter of Concern as a caution. This Letter of Concern is <u>not</u> considered a disciplinary action against your license" (emphasis in original). In accordance with the then-extant law, the letter was made part of Dr. Kloch's public record and was available on the Department of Health's website. <u>See</u> <u>id.</u> § 71-171.02.

After receiving the letter of concern, Dr. Kloch twice attempted to have it expunged. He attended Medical Board meetings in October 2002 and August 2004, each time denying the allegations in the letter and asking the Medical Board to reconsider. After the Medical Board refused to do so, Dr. Kloch filed this action, alleging that the issuance of the letter violated his due process rights because he was given neither adequate notice of the charges against him nor an opportunity to respond to those charges. The complaint named Bruning as a defendant in both his individual and official capacity. It also named as defendants several Medical Board members and the past and present director of the Department of Health.

The parties submitted cross-motions for summary judgment, contesting the constitutionality of the Uniform Licensing Law and the issue of immunity. Concluding that Dr. Kloch had a protected property interest in his medical license and that the Uniform Licensing Law allowed the state of Nebraska to deprive physicians of property without affording them notice and an opportunity to respond, the district court held that the Uniform Licensing Law was unconstitutional on its face and as applied to Dr. Kloch. Accordingly, the district court enjoined Bruning and his successors from enforcing the statute; and it ordered Bruning and the Department of Health to cease disseminating the letter, to rescind the letter, and to expunge any references thereto from Dr. Kloch's public record.

After deciding the constitutional issue, the district court found that qualified immunity protected all defendants other than Bruning. The court denied Bruning qualified immunity, concluding that, as a licensed attorney, Bruning reasonably should have known that the law was unconstitutional. The court also rejected Bruning's argument that he was entitled to absolute prosecutorial immunity, finding that he "did not initiate a prosecution or engage in functions closely tied to the judicial system."

Bruning contends that the district court erred in denying his claim of both qualified and absolute immunity. Because we conclude that Bruning was entitled to qualified immunity, we do not consider his alternative argument that the prosecutorial nature of his conduct protected him from personal liability. Because the Nebraska legislature has eliminated letters of concern in its recent recodification of the Uniform Licensing Law, see Neb. Rev. Stat. § 38-1,107 (2008), the constitutionality of the original statute is relevant only as it bears on the question of Bruning's liability to Dr. Kloch.

II.

A district court's grant or denial of summary judgment on the issue of qualified immunity is reviewed *de novo*. See South Dakota v. U.S. Dept. of Interior, 423 F.3d 790, 794 (8th Cir. 2005). Examining the record in the light most favorable to the non-moving party, we consider whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Id.

For government officials performing discretionary functions, qualified immunity provides a shield from civil damages except in cases in which they have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Hungerford, 23 F.3d 1450, 1452 (8th Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or

those who knowingly violate the law." <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (internal quotation omitted). We therefore must determine whether Dr. Kloch has established the violation of a constitutional right and, if so, whether that right was so clearly established that Bruning is not entitled to qualified immunity. <u>See</u> <u>Thomas</u>, 23 F.3d at 1452 (quoting <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).

### III.

Dr. Kloch maintains that the Uniform Licensing Law was unconstitutional because it allowed the state to issue a public letter of concern without giving him detailed notice of the charges and an opportunity to respond. A plaintiff is entitled to due process only when a protected property or liberty interest is at stake. <u>See</u> <u>Hopkins v. Saunders</u>, 199 F.3d 968, 975 (8th Cir. 1999). Abstract injuries, by themselves, do not implicate the due process clause. <u>See</u> <u>Connecticut Dept. of Public Safety v. Doe</u>, 538 U.S. 1, 6-7 (2003) ("mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest"); <u>Siegert</u>, 500 U.S. at 233-34 (defamation resulting in "serious impairment" of employment prospects does not create a liberty interest in reputation). Rather, a plaintiff must demonstrate that he has been deprived of some benefit to which he has a "legitimate claim of entitlement." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).

We have recognized that such an entitlement may exist where a state has established a licensing system for regulation of professionals. <u>See</u> <u>Marler v. Missouri State Board of Optometry</u>, 102 F.3d 1453, 1456 (8th Cir. 1996). Under those circumstances, a license may not be revoked without affording the accused procedural due process. <u>Id.</u> The dispositive question in Dr. Kloch's constitutional claim, therefore, is whether the letter of concern impaired his medical license.

Bruning argues that Dr. Kloch's medical license was unaffected by the letter of concern. He points to the language within the letter expressly stating that it is cautionary, and not a "disciplinary action against [Dr. Kloch's] license." We take this

to mean that a letter of concern was not intended to be a barrier to practicing medicine in Nebraska.  Apparently, a physician could receive any number of these notices and retain his license—so long as the state refused to pursue disciplinary measures.  From a formalistic standpoint, then, it seems Dr. Kloch's argument is without merit.

Dr. Kloch, however, urges us to accept a broader conception of that which impairs a physician's license.  He argues that the letter of concern constituted a disciplinary action because it made public a series of professional failures for which the Medical Board believed he was responsible.  Noting the similarity between letters of concern and disciplinary censure, Dr. Kloch points out that the Uniform Licensing Law provided due process safeguards with respect to the latter but not the former.

In support of his argument, Dr. Kloch cites <u>Fleury v. Clayton</u>, 847 F.2d 1229 (7th Cir. 1988), in which the Seventh Circuit concluded that Illinois physicians had a property interest in a "clean license" and held that formal disciplinary censure deprives a physician of that interest.  <u>Id.</u> at 1233.  If a letter of concern is substantively indistinguishable from disciplinary censure, Dr. Kloch argues, it should receive the same due process protection.  This reasoning was the linchpin of the district court's decision.  But we are not persuaded that the letter of concern in this case was equivalent to a formal censure.

To begin with, the censure discussed in <u>Fleury</u> was designed to be a disciplinary action.  In other contexts, we have recognized that legislative designations regarding the nature of a penalty are entitled to some consideration.  <u>See</u>, <u>e.g.</u>, <u>U.S. v. Lippert</u>, 148 F.3d 974, 976 (8th Cir. 1998) (discussing the importance of legislative distinction between civil and criminal penalties for double jeopardy purposes).  When a professional license is at stake, designating an action "disciplinary" may have serious consequences.[3]  In <u>Fleury</u>, the Seventh Circuit focused on the fact that a formal

---

[3]The Uniform Licensing Law, like similar regulatory schemes in other states, listed disciplinary action in foreign jurisdictions as a ground for revoking or restricting

censure could jeopardize the status of a physician's license in Illinois and in other states.  Fleury, 847 F.2d at 1230, 1233.  The court also expressed concern about the effect of a formal censure in subsequent disciplinary proceedings, noting that a censure could preclude a physician from contesting the allegations it contained.  Id. at 1232.

Under the Uniform Licensing Law, formal censure was available when the Attorney General believed that disciplinary action was necessary.  The record in this case includes examples of formal censures entered by the state, and they differ from letters of concern in important respects.  Formal censures are unmistakably adversarial: they are legal documents that begin with a caption naming the physician as a defendant in the proceeding.  Dr. Kloch's letter of concern, on the other hand, opens with a salutation and closes with a request that he "please accept this letter as a caution."  Formal censures and letters of concern are also qualitatively distinguishable in both tone and impression.  Formal censures express strong condemnation of the accused, and they do so with gravity and clarity.

Moreover, the significance of a letter of concern to subsequent proceedings was minimal.  The record reflects that the Medical Board could consider prior letters of concern when it screened complaints.  Ultimately, however, the decision to pursue discipline rested with the Attorney General.  According to an affidavit provided by Assistant Attorney General James Smith, who was tasked with prosecuting administrative disciplinary proceedings against physicians, letters of concern "would not be, should not be, and never [have] been . . . relevant to or a proper subject of consideration when imposing discipline sanctions in the event of future discipline of

_____

a physician's license.  See Neb. Rev. Stat. § 71-147; see also Iowa Code § 148.6(d) (2007) (listing "other disciplinary action taken by a licensing authority of another state"); Mo. Rev. Stat. § 334.100.2(g) (2007) (listing "[f]inal disciplinary action by . . . any other state or territory").  Nebraska's explicit statement that a letter of concern was "not disciplinary" evinces an intent to shield the recipient from such adverse consequences.

a doctor's license." (J.A. at 9.) In support of this assertion, Smith points to administrative regulations prohibiting consideration of "uncharged incidents" when discipline sanctions are imposed. Id. at 8; see also Neb. Admin. Code, Title 184, Ch.1 § 1:013.03. "Prior disciplinary action," in contrast, may be considered. (J.A. at 9.) Thus, Nebraska could not have disciplined a physician on the basis of conduct discussed in a letter of concern without first formally charging the physician and holding a hearing to test the allegations. Given this distinction, we conclude that the Seventh Circuit's reasoning in Fleury is inapplicable in this case.[4]

The district court was troubled by the public availability of letters of concern. The court noted that public letters could have "serious ramifications for the accused." The court's concern may well have been the motivation for the legislative elimination of letters of concern from the state's regulatory scheme. As a constitutional matter, however, Dr. Kloch is not entitled to due process protection for damage to his reputation alone; and he has failed to show that his medical license was tangibly impaired.

---

[4]Dr. Kloch also cites Lowe v. Scott, 959 F.2d 323 (1st Cir. 1992), in support of his argument. Although the First Circuit agreed with Fleury in its Lowe holding, see id. at 339, Lowe provides little help to Dr. Kloch. In Lowe, the plaintiff based his due process arguments on disciplinary actions that produced a tangible effect on his license: revocation of his hospital privileges and suspension of his authority to supervise nurse midwives. Id. at 325. Thus, Lowe is even less apposite than Fleury.

## IV.

Even if we were to conclude that Dr. Kloch properly alleged a constitutional violation, we are satisfied that Bruning is entitled to qualified immunity under the second prong of our analysis: whether the right at issue was so clearly established that a reasonable official would have known that his conduct was unconstitutional.  See Weiler v. Purkett, 137 F.3d 1047, 1052 (8th Cir. 1998) (en banc).  Qualified immunity protects public officials who act in good faith while performing discretionary duties that they are obligated to undertake.  See King v. Beavers, 148 F.3d 1031, 1034 (8th Cir. 1998).  Bruning had a statutory obligation to enforce the laws of his state.  See Neb. Rev. Stat. § 84-731.  His decision to enforce a law of arguable constitutional validity falls within the ambit of protected official discretion.

The judgment is reversed and the case is remanded to the district court for the entry of a judgment of dismissal.

_____