# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 08-2586
_____

| | | |
|---|---|---|
| Bill M., by and through his father and natural guardian, William M., and on behalf of themselves and all other persons similarly situated; John Doe, by and through his mother and natural guardian, Jane Doe, and on behalf of themselves and all other persons similarly situated; Heather V., by and through her mother and guardian, Marcia V., and on behalf of themselves and all other persons similarly situated; Jane S., by and through her mother and natural guardian, Patricia S.; Kevin V., by and through his mother and legal guardian, Kathy V.; Jennifer T., by and through her parents and legal guardians, Sharon and Greg T.; Leslie H.; Catherine M.; Stephanie B.; Conrad J., by and through his legal guardian, C.W.J.; Christopher H., by and through his legal guardian, Sue H.; Michael R., | * * * * * * * * * * * * * * * * * * * * | |
| Appellants, | * * | |
| v. | * * | Appeal from the United States District Court for the District of Nebraska. |
| Nebraska Department of Health and Human Services Finance and Support; Nebraska Department of Health and Human Services; Richard Nelson, in his official capacity as the Director of Nebraska Department of Health and | * * * * * * | |

Human Services Finance and Support;    *
Nancy Montanez, in her official    *
capacity as the Director of Nebraska    *
Department of Health and Human    *
Services,    *
   *
         Appellees.    *

_____

Submitted: March 9, 2009
Filed: July 2, 2009

_____

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The appellants, a group of developmentally disabled Nebraska residents, filed an action in the district court[1] against several Nebraska state agencies and officials, alleging violations of federal law. The case was settled, and the central question on appeal is whether each of the plaintiffs was a "prevailing party" in the action, such that the plaintiffs were entitled to attorneys' fees. The district court held that they were not prevailing parties and denied their application for fees. We affirm.

I.

In 2003, Bill M. and other developmentally disabled Nebraska residents (collectively, "the plaintiffs") filed suit against the Nebraska Department of Health and Human Services Finance and Support, the Nebraska Department of Health and Human Services, and two department directors in their official capacities (collectively,

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

-2-

"the State"). The plaintiffs' second amended complaint sought declaratory and injunctive relief for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; federal Medicaid statutes, 42 U.S.C. § 1396 *et seq.*, and regulations, *e.g.*, 42 C.F.R. § 440.230(b); and the Due Process Clause of the Fourteenth Amendment. The gravamen of their complaint was that the State unlawfully provided inadequate funding for developmental-disability services, thereby raising the risk that the plaintiffs and others similarly situated would be placed in institutional (as opposed to "less restrictive" residential or community) settings.

In February 2008, the parties advised the district court that they had reached an oral settlement agreement. The district court gave the parties thirty days to reduce their agreement to writing and to file a joint stipulation for dismissal. Unable to meet that deadline, the parties moved for an extension of time, and the court granted an additional thirty days, until April 2, 2008, to make the necessary filing. The court warned, however, that "no further extensions will be granted, and that in the event of noncompliance with [the new deadline], this action may be dismissed without further notice."

The parties executed a written settlement agreement on March 31, 2008. As part of the settlement, the State agreed to convene "workgroups" to study issues relating to the State's system of providing services to the developmentally disabled. The State also agreed to implement new procedures for handling requests for such services. For their part, the plaintiffs agreed to dismiss their claims with prejudice, provided that the district court retained jurisdiction to decide the issue of attorneys' fees.

On April 2, 2008, the parties timely filed a joint motion and stipulation for "approval" of the settlement. In a memorandum and order, the district court advised

the parties that it was "willing to grant the motion and 'approve' the stipulation and related settlement agreement with the following understanding":

(1)     I make no determination that the settlement agreement is good or bad or fair or unfair.

(2)     With the exception that I will resolve the attorney fee question as contemplated by the settlement agreement, I retain no jurisdiction to enforce or construe the settlement agreement in the future. Furthermore, my "approval" of the settlement agreement does not suggest that there would later be federal jurisdiction to construe or enforce the terms of the settlement agreement. In other words, the settlement agreement is merely a contract between the parties and my "approval" of it confers no other status.

(3)     Plaintiffs' counsel will be understood to have represented to me that each person signing the settlement agreement for a disabled person has the authority to do so.

The district court asked the parties whether, having reviewed its memorandum and order, they still requested that it grant their joint motion and stipulation for "approval" of the settlement. Both parties certified that they did, and the court granted their motion, subject to the above understanding. The court then dismissed the entirety of the case with prejudice, except for the issue of attorneys' fees, which it retained jurisdiction to resolve.

The plaintiffs applied for attorneys' fees under the ADA, 42 U.S.C. § 12205; the Rehabilitation Act, 29 U.S.C. § 794a(b); and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). The district court denied the plaintiffs' application on the ground that they were not prevailing parties, and thus not eligible for fees under those statutes. This appeal followed.

II.

The plaintiffs argue that the district court erred in denying their application for attorneys' fees. They contend that they "prevailed" in the underlying action, because the settlement they reached with the State provided some of the relief that they sought. As prevailing parties, the plaintiffs contend, they are entitled to attorneys' fees under the applicable federal fee-shifting statutes. We review *de novo* the legal question whether a litigant is a "prevailing party." *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003).

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), the Supreme Court concluded that a "prevailing party" is one that obtains a judicially sanctioned, material alteration of the legal relationship of the parties. *Id.* at 604-05.[2] Thus, a party that secures an enforceable judgment on the merits or a court-ordered consent decree is a "prevailing party." *Id.* at 604. By contrast, the Court implied, a party that obtains a mere private settlement does not qualify, because "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." *Id.* at 604 n.7. Indeed, the Court noted, "federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Id.*

The plaintiffs here reached a settlement agreement with the State. The district court did not make any determination as to whether the settlement agreement was "good or bad or fair or unfair." Nor did the district court incorporate the terms of the agreement into its order of dismissal, or otherwise retain jurisdiction "to enforce or

_____

[2]Although the plaintiffs request attorneys' fees under a number of federal fee-shifting statutes, some of which were not at issue in *Buckhannon*, we interpret the statutes consistently. *Buckhannon*, 532 U.S. at 603 n.4; *Cody v. Hillard*, 304 F.3d 767, 773 n.3 (8th Cir. 2002).

construe the settlement agreement in the future." As a result, the parties' settlement does not entail the "judicial approval and oversight," *id.*, required for a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. Because the parties' settlement "lacks the necessary judicial *imprimatur*" to confer upon the plaintiffs "prevailing party" status, *id.*, the district court properly denied the plaintiffs' request for attorneys' fees under the applicable federal fee-shifting statutes.

The plaintiffs contend that they had no choice but to agree that the district court would not retain jurisdiction to enforce or construe the settlement agreement, because the court threatened to dismiss the case if a written settlement was not finalized. According to the plaintiffs, it was improper for the court essentially to rewrite the terms of the parties' agreement. The implication is that if the terms had remained unaltered, then the court would have retained jurisdiction over the agreement, and the plaintiffs would have been in a better position to claim status as prevailing parties.

Leaving aside whether the plaintiffs' status would have been any different, *see Christina A.*, 315 F.3d at 993 (concluding that "the district court's enforcement jurisdiction alone is not enough to establish a judicial '*imprimatur*' on the settlement contract" where the court does not have contempt power), we see no merit to their contention that they were forced to agree that the district court would not retain jurisdiction over the agreement. To be sure, the court informed the parties that the action could be dismissed without further notice if they failed to meet the extended deadline for reducing their agreement to writing and filing a joint stipulation for dismissal. This caution, however, was an appropriate means to enforce the court's deadline and keep the proceedings moving. In its subsequent memorandum and order setting forth its conditions for granting the parties' motion for "approval" of the settlement, the court gave both parties the option of requesting that it deny the motion if they found the conditions unacceptable. The plaintiffs could have chosen to reject the settlement agreement and proceed with the litigation. If the court dismissed the case simply because the plaintiffs declined to agree to the settlement, then the

plaintiffs would have been free to appeal and challenge the adequacy of the court's reason for dismissing the case.  We are thus unpersuaded that the plaintiffs had no choice but to sign a settlement agreement over which the district court declined to retain jurisdiction.

For these reasons, the judgment of the district court is affirmed.

_____