# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1639

_____

| | | |
|---|---|---|
| Crystal Coates, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Derrick Powell, in his official and | * | Western District of Missouri. |
| individual capacity; Jeff Glandon, | * | |
| in his official and individual capacity; | * | |
| James Keathley, Superintendent of the | * | |
| Missouri State Highway Patrol, in his | * | |
| official capacity, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: September 20, 2010
Filed: April 8, 2011

_____

Before GRUENDER, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant Crystal Coates brought suit against Missouri State Highway Patrolman Derrick Powell, City of New Franklin Police Officer Jeff Glandon, and others, alleging § 1983 constitutional claims and state tort claims for events that occurred during the course of an investigation concerning alleged child neglect by Crystal Coates. Coates settled her claims against Powell and several other defendants

and the district court[1], in a separate order, denied her request for attorney's fees under 42 U.S.C. § 1988.[2] The district court also granted Glandon summary judgment on the basis of qualified immunity. *Coates v. Powell*, 650 F.Supp.2d 932, 941 (W.D. Mo. 2009). Coates appeals these adverse determinations.

We affirm, concluding (1) the private settlement agreement between Ms. Coates and Powell did not make Coates a prevailing party entitled to attorney's fees under federal law, and (2) the district court properly determined that Glandon was entitled to qualified immunity for his Fourth Amendment violation in remaining in Coates's home without consent for ten to fifteen minutes. The district court found that it was not clearly established that he was required to immediately leave her home under the circumstances in this case.

## I. BACKGROUND

On June 5, 2006, the Missouri Department of Social Services received a call that Coates's children were playing outside the home unattended. This prompted an investigation by Tiffany Clevenger, a Children's Social Worker with the Children's Division of the Missouri Department of Social Services. On the next day, Clevenger contacted local law enforcement offices and requested that Officer Glandon accompany her to investigate the call, as provided for in Missouri statutes.[3] Trooper

_____

[1]The Honorable Nanette K. Laughrey, United States District Court for the Western District of Missouri.

[2]Although the claim for fees was brought under section 1988, the discussion on fees would encompass any claims under section 1983.

[3]The district court quoted and cited the statutory provisions applicable which we repeat in this footnote. Missouri Revised Statute Section 210.145.4 provides that the Children's Division of the Missouri Department of Social Services:

Powell was present at the time and volunteered to assist Clevenger and Officer Glandon in the investigation.

The three proceeded to Coates's house, arriving at approximately 10:00 in the morning. They possessed no warrant to enter Coates's house and believed the children were at school. Once there, Coates's boyfriend consented to their entry into the house. Coates awoke from her sleep and, after some heated discussion with the officers, she told the officers to "get the ---- out of my house." During this time, Coates attempted to get up from a couch where she was seated, but Powell touched her at least twice, forcing her back into the couch. However, at no time did Officer Glandon touch Coates. The officers remained in the house for another ten to fifteen minutes at which time Clevenger directed that they leave and all three left the house.

After the investigators left the house, Coates also left her home, got in her car, and drove off to pick up her daughter from school. The officers stayed outside Coates's home until she returned, at which time Powell asked Coates for her driver's license, intending to cite her for improperly displaying a license plate and not wearing a seatbelt. Coates refused to sign the citations and told Powell to "haul her in." Powell arrested her, and in handcuffing her, applied a "CLAMP" maneuver during which he broke her arm. He then called for medical assistance. Coates did not believe

---

shall contact the appropriate law enforcement agency immediately upon receipt of a report which [Children's Division] personnel determine merits an investigation and provide such agency with a detailed description of the report received. In such cases the local division office shall request the assistance of the local law enforcement agency in all aspects of the investigation of the complaint.

Section 210.145.4 also states that "[t]he appropriate law enforcement agency shall . . . assist the division in the investigation." *Id.*

-3-

Powell intended to break her arm.  The application of the CLAMP maneuver took only a couple of seconds.

Coates subsequently filed state law tort claims and claims for deprivation of her civil rights under 42 U.S.C. § 1983 against the two officers, Clevenger, Powell's supervisor (James Keathley), and the City of New Franklin.  In December 2009, after Powell and several other defendants settled with Coates on the eve of trial, Coates moved for attorney's fees against these parties under 42 U.S.C. § 1988.  On January 25, 2010, the district court determined from the record that the private settlement agreement did not make Coates a "prevailing party" entitled to attorney's fees. *Coates v. Powell*, 2010 WL 376995 (W.D. Mo. 2010).

As for Glandon, in July 2009, the district court granted him qualified immunity against Coates's § 1983 claims. *Coates*, 650 F.Supp.2d at 941.  The court determined that Glandon violated the Fourth Amendment when he refused to leave Coates's home.  Nevertheless, the court granted Glandon qualified immunity, finding that the law did not clearly establish "at the time of this incident that an officer was required to leave a private home in the middle of a child neglect investigation." *Id.* at 938-39.[4] This timely appeal followed.

---

[4]The court primarily relied on *Georgia v. Randolph*, 547 U.S. 103 (2006) and *Gates v. Texas Dep't of Protective & Reg. Servs.*, 537 F.3d 404 (5th Cir. 2008). Although dicta in *Georgia* states that "[n]o question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence," *Georgia* expressly disclaimed the effect of its holding on domestic victims.  547 U.S. at 118.  ("[T]his case has no bearing on the capacity of the police to protect domestic victims."). *Id.*  The dicta in *Georgia* focused on the need to protect a person present in the home who was in danger of abuse.  As for *Gates*, we believe it is not determinative because it considered the law before the Supreme Court's opinion in *Ferguson v. Charleston*, 532 U.S. 67 (2001). Accordingly, these cases are not determinative here.

## II. DISCUSSION

A.      Attorney's fees

Coates challenges the district court's determination that she was not a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988. We review de novo whether a litigant is a prevailing party. *Advantage Media, LLC v. City of Hopkins*, 511 F.3d 833, 836 (8th Cir. 2008).

A "prevailing party" is one that obtains a judicially sanctioned, material alteration of the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 601 (2001). Examples include enforceable judgments on the merits and court-ordered consent decrees. *Id.* at 604. We have stated that *Buckhannon* "implied [that] a party that obtains a mere private settlement does not qualify [as a prevailing party], because 'private settlements do not entail the judicial approval and oversight involved in consent decrees.'" *Bill M. v. Nebraska Dep't of Health and Human Services*, 570 F.3d 1001, 1003 (quoting *Buckhannon*, 532 U.S. at 604 n.7).

Shortly after *Buckhannon*, we examined whether a private settlement between a class of prisoners and a training school rendered the class of prisoners a prevailing party. *Christina A. v. Bloomberg*, 315 F.3d 990, 991-92 (8th Cir. 2003). Although the district court in that case approved the settlement agreement as "fair, reasonable, and adequate" under Rule 23(a) of the Federal Rules of Civil Procedure, this exercise failed to impose the necessary imprimatur on the agreement. *Id.* Nor was the district court's retention of enforcement jurisdiction alone sufficient to establish judicial imprimatur. *Id.* We held that the private settlement agreement did not serve as a consent decree and therefore the inmate class was not a prevailing party. *Id.* at 993-94.

Recently, in *Bill M.*, we affirmed the denial of prevailing party status where the parties reached an oral settlement agreement that the district court directed be reduced to writing. *Id.* at 1001-02. In that case, the district court made no determination of whether the agreement was "good or bad or fair or unfair," nor did it incorporate the terms of the agreement into its order of dismissal or otherwise retain jurisdiction to enforce the settlement agreement. *Id.* at 1003-04. Consequently, we determined that "the parties' settlement does not entail the judicial approval and oversight required for a judicially sanctioned change in the legal relationship of the parties." *Id.* at 1004 (quotations and citations omitted). We held that the settlement lacked "the necessary judicial imprimatur" to confer prevailing party status upon the plaintiffs. *Id.*

We conclude this line of cases forecloses Coates from obtaining attorney's fees as a prevailing party. Shortly before trial, Powell (and others) offered to settle for $45,000. The entirety of the offer states, "This letter is to formalize the settlement offer on behalf of the State of Missouri. We are willing to pay your client $45,000.00 in settlement of all claims between Plaintiff and the Defendants." Jt. App. at 750. On the eve of trial, Coates responded to the offer via email: "We've reviewed the $45,000 settlement offer you faxed on Friday and my client has accepted your terms." Jt. App. at 751. The parties did not otherwise execute a formal written settlement contract. The district court did not incorporate the agreement into a settlement decree or into the order for dismissal and expressly stated that it would not incorporate the terms of the settlement into its judgment or retain jurisdiction over enforcement of the contract.

Here, the district court took no action judicially sanctioning or materially altering the legal relationship of the parties. The court did not approve a settlement, nor enter a judgment on the merits or a consent decree. There is no judicial imprimatur on the settlement which could give rise to prevailing party status. Accordingly, we hold that Coates is not entitled to attorney's fees under 42 U.S.C. § 1988.

B.    Qualified Immunity

Coates contends the district court erred in holding that Glandon did not violate her clearly established Fourth Amendment rights by remaining in her home after she revoked the consent given by her boyfriend.[5]  Coates argues that "black letter law" establishes that intrusions into the home, absent a warrant, exigent circumstances, or consent of an apparently authorized party are presumed unreasonable.

Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008).  We review de novo summary judgment where granted on the basis of qualified immunity.  *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650 (8th Cir. 2002).

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  We may first determine whether the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 129 S.Ct. at 818 (holding *Saucier's* two-step sequence is not mandatory).

---

[5]Coates does not appear to challenge the district court's rulings with respect to her excessive force or state law tort claims against Glandon.  We deem these issues waived.  *See Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) (holding appellant waived issues not supported with argument and legal authority); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997) ("Generally, we will consider an issue not raised or briefed in this court waived.").  Additionally, we note that Coates frames her qualified immunity challenge as against Glandon and Powell.  But she settled "all claims" against Powell.  Consequently, we need not review the district court's qualified immunity determination regarding Powell.

If so, we next consider whether that right was clearly established at the time of the misconduct. *Saucier*, 533 U.S. at 201-02.

As to the first inquiry, the district court concluded that Glandon violated the Fourth Amendment when he refused to leave Coates's home, explaining:

> The undisputed facts indicate that there [was no threat to the Coates children] confronting Officer Glandon. While there is evidence of a hotline call, the only descriptions of the hotline call indicate that it was a report of children playing outside unattended. . . . [T]here was no urgency in the conduct of that investigation . . . .The parties agree that, at the time Coates revoked consent, the officers knew that the children were not in the home. . . . The officers apparently did not believe Coates herself to be a danger to the children . . . [And] do not argue that Coates's agitation alone created exigent circumstances independently allowing the officers to remain in the house. . . . They could have attempted to obtain a warrant. They did not. The officers raise no argument that they left Coates's house within a reasonable time of being ordered to leave: there is evidence that they did not leave for more than ten minutes after consent was revoked, and only upon Clevenger's request. They were in violation of the Fourth Amendment when they remained in the house for an unreasonable time after consent was revoked.

*Coates*, 650 F.Supp.2d at 939-40.

On appeal, neither Coates nor Glandon challenge the court's determination that Glandon's conduct violated the Fourth Amendment. Accordingly, we turn to the second inquiry of qualified immunity analysis.

"In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989)

(quotation omitted). This is a "fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006) (quotation omitted). We assess the "objective reasonableness of the action . . . in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (stating an officer's "subjective beliefs about the search are irrelevant"). As we explained in *Omni*, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 285 F.3d at 653. Accordingly, we frame the clearly established question as whether a reasonable police officer would have known that he violated clearly established Fourth Amendment law by remaining in Coates's home for ten to fifteen minutes when the officer was accompanying a social services worker investigating a complaint of child neglect as authorized by state statute. We affirm the grant of qualified immunity.

We have stated that qualified immunity "protects public officials who act in good faith while performing discretionary duties that they are obliged to undertake." *Kloch v. Kohl*, 545 F.3d 603, 609 (8th Cir. 2008). In that case, we held the Nebraska Attorney General's obligation to enforce the laws of his state entitled him to qualified immunity, even though the law was of arguable constitutional validity. *Id.* Likewise, the Ninth Circuit has held that an officer who acts in reliance on a duly-enacted statute is ordinarily entitled to qualified immunity, unless the statute is "obviously" unconstitutional. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009), *as amended by* 547 F.3d 1117. And the Tenth Circuit has observed that "reli[ance] on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question" is a relevant factor in considering the objective legal reasonableness of a state official's action. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003) (holding reliance on a state statute did not authorize removal of children absent pre-deprivation procedures).

Here, Glandon undertook an obligation under Missouri law to assist Clevenger in the investigation relating to Coates's children.[6] Although Coates ordered the officers out of the house, she did not address Clevenger in that request.[7] Clevenger remained inside the house, attempting to continue the investigation. We believe that a reasonable police officer could act in good faith and remain in the house still assisting Clevenger. Glandon did exactly that in this case. He (and Powell) immediately left the house when Ms. Clevenger told them to leave.

For these reasons, we agree with the finding of the district court "that Glandon is entitled to qualified immunity because it was not clearly established at the time of this incident that an officer was required to leave a private home in the middle of a child neglect investigation." *Coates*, 650 F.Supp.2d at 938-39. That precisely was the situation here.

For the above reasons, we affirm the dismissal of the § 1983 claim against Officer Glandon on the basis of his receiving qualified immunity. Thus, we affirm on the issues presented on this appeal.

---

[6]We note that Missouri law describes the contours of the investigation as follows: "The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; . . . any indication of incidents of physical violence . . . and other pertinent data." Mo. Rev. Stat. § 210.145.7.

[7]Had Coates ordered Clevenger to leave, the qualified immunity analysis may be different because in that instance, Glandon could not reasonably rely on his statutory duty to assist Clevenger because Clevenger would have had no right to remain in Coates's home.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that Coates was not a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988. I part ways with the majority, however, over its decision to grant qualified immunity to Glandon.

I am deeply concerned about the Fourth Amendment violation at issue in this case. Respect for the sanctity of the home "has been embedded in our traditions since the origins of the Republic." *Payton v. New York*, 445 U.S. 573, 601 (1980). The Supreme Court is crystal clear that without a warrant, an officer cannot enter a home absent exigent circumstances. *Steagald v. United States*, 451 U.S. 204, 211-12 (1981). Because Glandon did not have a warrant and there were no exigent circumstances, Glandon could only enter the home with Coates's voluntary consent, *Georgia v. Randolph*, 547 U.S. 103, 109 (2006), and he remained in the home subject to her approval, *United States v. McMullin*, 576 F.3d 810, 815 (8th Cir. 2009). Although a report of child abuse is a serious allegation, by the time Glandon was asked to leave the home, Glandon knew there was no immediate danger to the children. Accordingly, Glandon violated Coates's Fourth Amendment rights when he did not leave her home at her request.

A finding of a Fourth Amendment violation does not end the analysis, and I agree with the majority that the crux of the qualified immunity question is whether a reasonable officer would have understood that remaining in Coates's home without her permission violated clearly established Fourth Amendment law. But I disagree with the majority's conclusion that despite the longstanding Fourth Amendment prohibition, Glandon acted reasonably because of the obligations imposed on officers under the Missouri statute at issue. Because I believe the Missouri statute did not make Glandon's actions objectively reasonable, I respectfully dissent.

-11-

The qualified immunity inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotations omitted). "[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Roska*, 328 F.3d at 1252 (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994)). Police officers are entitled to rely on the assumption that the legislature considered the views of legal counsel and concluded that the statute is constitutional. *Id.* at 1252 n.29 (quoting *Grossman*, 33 F.3d at 1209). The existence of an authorizing statute, however, does not make an officer's actions per se reasonable. *Denton v. Rievley*, 353 F. App'x 1, 6 (6th Cir. 2009); *Roska*, 328 F.3d at 1252; *Grossman*, 33 F.3d at 1209-10.

Whether a statute makes an officer's actions reasonable depends in part on "the degree of specificity with which the statute authorized the conduct in question." *Roska*, 328 F.3d at 1253. For example, in *Denton*, the Sixth Circuit found that a state statute indicating a preference for arrest where there is probable cause of domestic abuse was insufficiently specific to make the officer's arrest of a person inside his home without a warrant objectively reasonable. 353 F. App'x at 6-7. Because the state statute did not require warrantless arrests and was silent as to whether the preference for arrest applied to warrantless, in-home arrests, the Sixth Circuit concluded that the statute did not make the officer's actions reasonable in light of longstanding Supreme Court precedent holding that such actions violate the Fourth Amendment. *Id.* at 7. Accordingly, before concluding that the Missouri statute at issue made Glandon's actions reasonable, I think the majority should have considered the statute's specificity.

Because the Missouri statute imposes only a general obligation on officers, Glandon's compliance with the statute did not make his actions reasonable. The relevant Missouri statute, section 2010.145.4 of the Missouri Revised Statutes, states

-12-

that "[t]he appropriate law enforcement agency shall . . . assist the [Children's] division in the investigation." The statute does not, however, define or specify the form of assistance required. Thus, although the statute obligated Glandon to offer some type of help, it did not specifically require him to accompany social services workers in their investigations, let alone require him to accompany them into private homes or remain with them in private homes even after homeowners withdraw their consent. *See Denton*, 353 F. App'x at 7. Here, because remaining in Coates's home without her consent violated well-established Fourth Amendment law and nothing in Missouri statute obligated Glandon to stay, Glandon's actions were not objectively reasonable.

The majority cites *Kloch* in support of its opposite conclusion. In *Kloch*, we hinted at a per se rule of reasonableness when we broadly stated that officers' actions are objectively reasonable when they act "in good faith while performing discretionary duties that they are obliged to undertake." 545 F.3d at 609. However, because legal reasonableness ultimately depends on the legal landscape taken as a whole, *Wilson*, 526 U.S. at 614, *Kloch* must stand for the limited proposition that when a state statute specifically requires officers to take certain actions, the officer's compliance with the statute will generally resolve the question of reasonableness. Accordingly, *Kloch* is not dispositive here because the Missouri statute did not specifically require Glandon to remain with the social services worker.

The majority finds *Kloch* applicable because it treats the Missouri statute as obligating Glandon to accompany social services workers into private homes. The majority describes the clearly established question as whether the Fourth Amendment was violated "when the officer was *accompanying* a social services worker investigating a complaint of child neglect *as required by state statute*" (emphasis added). If the Missouri statute had in fact required Glandon to "accompany" the social services worker, I would most likely agree that it made Glandon's actions reasonable. Because the statute imposed only a general obligation to assist, however,

-13-

I conclude that despite the Missouri statute, a reasonable officer would have known that remaining in Coates's home violated clearly established Fourth Amendment law.

I respectfully dissent from the majority's decision to grant qualified immunity to Glandon.

_____