# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2828

_____

Fedja Rochling, M.D.

*Plaintiff - Appellant*

v.

Department of Veterans Affairs; Eric K. Shinseki, in his official capacity as the
Secretary for the Department of Veterans Affairs; Department of Health and
Human Services; Kathleen Sebelius, in her official capacity as the Secretary for
the Department of Health and Human Services

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 11, 2013
Filed: August 8, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Following a patient's death at a Veterans Affairs hospital, the family sued the
VA for medical malpractice. The VA settled with the family. After reviewing the
case, the VA determined that the settlement was "for the benefit of" Dr. Fedja A.

Rochling, M.D. This finding required a report to the National Practitioner Data Bank (NPDB). Following his administrative appeals, Rochling sued the VA alleging due-process and Administrative Procedure Act violations. The district court[1] dismissed the due-process counts for failure to state a claim. The court then denied Rochling's request to supplement the record with additional discovery. The district court[2] granted summary judgment to the VA on the APA claims. Rochling appeals these three rulings. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In August 2000, a patient with significant liver problems was treated at the VA hospital in Muskogee, Oklahoma. On August 21, he underwent a laparoscopic cholecystectomy and liver biopsy. Dr. Richard R. Jesudass unsuccessfully attempted an endoscopic retrograde cholangiopancreatogram (ERCP). Dr. Jesudass called the VA hospital in Little Rock to alert them to the patient's upcoming transfer and to recommend a second ERCP.

The patient was transferred to Little Rock on August 31. Dr. Rochling was the "consultant attending Gastroenterologist of record" on three of the six days the patient received care in Little Rock. Rochling first saw the patient on the afternoon of September 1, noting "We were called by Muskogee VA gastroenterology on 8/31/00 to request transfer for a second attempt at ERCP." Rochling did not perform a second ERCP, writing that "we will reevaluate for ERCP 9/5 based on clinical progress."

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska (on reassignment).

Over the next few days, the patient's condition deteriorated. After seeing him on September 5, Rochling wrote that he did not "think that ERCP is indicated at this point." The patient died on September 7. The autopsy report stated that the patient

> was found to have a surgically resected and clipped common hepatic duct. Also he had hepatic cirrhosis and ascites was noted. The lungs were hyperemic congested. Renal cell carcinoma lesion was noted on left kidney. The obstruction of the common bile duct and rapid increase in serum bilirubin and impairment of liver function are leading causes of death in this patient.

The decedent's family sued the VA, claiming:

> The VA surgeon placed clips on the patient's common bile duct and left them there when the surgery was completed, which was below applicable standards of care. Following the surgery the patient began sufferings [sic], signs a[nd] findings indicative of biliary obstruction. Nevertheless, the VA staff failed to timely recognize these signs symptoms and findings and failed to follow-up with the appropriate imaging studies and corrective surgery. As a proximate result of the foregoing the patient died.

The VA settled the claim in March 2003.

In January 2004, the VA notified Rochling of the claim and the settlement. The letter informed him that a panel would review the case for "substandard care, professional incompetence, or professional misconduct," determinations which would lead to reporting to the NPDB. The letter offered Rochling the opportunity to submit information to the panel for consideration, which he did. The VA considers a settlement payment to be made for the benefit of a physician if the panel "concludes that payment was related to substandard care, professional incompetence, or professional misconduct." **38 C.F.R. § 46.3(b)**. The three-member panel evaluating Rochling's case was composed of three physicians, one being a board-certified

general surgeon experienced in laparoscopic cholecystectomy. Rochling received notice of the panel's decision on July 22, which stated: "The Panel concluded that this patient received substandard care and identified the attending Gastroenterologist at the Little Rock VAMC, **Fedja A. Rochling, M.D., Bch.**, as the responsible practitioner." The decision was "[b]ased on a review of the medical record as well as any additional information submitted by practitioners involved in this case."

Through two letters from his attorney, Rochling requested reconsideration, offering to provide opinions of independent consultants. The VA Medical Center Director on August 11 stated that the panel would "re-review this case to determine the possible need for further review by a medical sub-specialist." Rochling submitted two reports from gastroenterologists to the panel on September 15 and October 6. In a letter dated September 16, the panel said it re-reviewed the case on August 11 and came to the same conclusion. On May 8, 2006, the VA submitted its report to the NPDB, stating that the settlement was for the benefit of Rochling. Rochling submitted an administrative dispute in August, seeking withdrawal of the report. The VA denied the request. In December, he sought review from the Secretary of Health and Human Services. She denied the request for review in March 2010, explaining that the arguments Rochling made were beyond the scope of proper HHS review.

Rochling sued in August 2010, alleging violations of the APA and his substantive and procedural due-process rights. In March 2011, the district court dismissed the due-process claims under Federal Rule of Procedure 12(b)(6). In April 2011, Rochling moved for additional discovery and to supplement the record. The district court denied his requests. *Rochling v. Dep't of Veterans Affairs*, 2011 WL 5525342, at *2 (D. Neb. Nov. 14, 2011). The parties cross-moved for summary judgment on the APA claims. The court granted the defendants' motion.

-4-

Rochling contends that the district court erred by dismissing his due-process claims for "failure to state a claim upon which relief can be granted." **Fed. R. Civ. P. 12(b)(6)**.

> This court reviews de novo the grant of a motion to dismiss for failure to state a claim. *Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). Reviewing a dismissal under Rule 12(b)(6), this court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts most favorably to the complainant. *Id.* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 555.

*Minn. Majority v. Mansky*, 708 F.3d 1051, 1055-56 (8th Cir. 2013).

A.

A procedural due process analysis has two steps: "first, whether the plaintiffs have a protected interest at stake, and if so, what process is due." **Bliek v. Palmer**, 102 F.3d 1472, 1475 (8th Cir. 1997). The district court dismissed Rochling's procedural due-process claim finding no protected interest. His complaint pleaded the following injury:

> 51. As a result of the VA's actions, Dr. Rochling was required to disclose the report to the state boards of Nebraska and Wisconsin.
> 52. As a result of the Defendants [sic] actions, Dr. Rochling will also be required to disclose and defend the VA's report to the NPDB each time

he applies or re-applies for privileges at a medical facility, employment, state medical licenses or insurance.

53. Prior to the VA's NPDB report, Dr. Rochling had never been reported to the National Practitioner Data Bank.

54. The continued existence of the VA's NPDB report results in exponential harm to Dr. Rochling because any denial of employment, privileges or licensure will result in additional reports to the NPDB and further damage to Dr. Rochling.

The plaintiff must first show deprivation of a "constitutionally protected life, liberty or property interest." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1114 (8th Cir. 2009). "[M]ere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003), *citing Paul v. Davis*, 424 U.S. 693 (1976); *see also Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991). This court agrees with the district court that Rochling did not sufficiently plead deprivation of a constitutionally protected interest. Rochling's complaint contains only conclusory statements of injury that do not rise above a "speculative level." *See Minn. Majority*, 708 F.3d at 1055-56.

This court has held that a "letter of concern" from the state licensing board made part of a physician's public record did not impair his license enough to support a due-process claim. *Kloch v. Kohl*, 545 F.3d 603, 607-09 (8th Cir. 2008). Rochling attempts to avoid *Kloch* three ways. First, he argues it is distinguishable because *Kloch* was decided on summary judgment, not on a motion to dismiss. This is of no consequence. If the alleged injury is not a deprivation of a constitutionally protected interest, that ends the inquiry at any stage.

Second, Rochling notes that the *Kloch* court "acknowledged" that a plaintiff must prove a deprivation of a "legitimate claim of entitlement," which "may exist where a state has established a licensing system for regulation of professionals." *See Kloch*, 545 F.3d at 607, *citing Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564,

577 (1972) *and **Marler v. Mo. State Bd. of Optometry***, 102 F.3d 1453, 1456 (8th Cir. 1996). This court agrees. An impairment of a medical license certainly *could* give rise to a constitutional claim. As this court explained in *Kloch*: "The dispositive question . . . is whether the letter of concern impaired his medical license." ***Id.***

It is on that dispositive question that Rochling makes his third argument: that the letter of concern in *Kloch* is not as serious as the NPDB report in this case. Rochling urges this court to follow the Seventh Circuit's reasoning in *Fleury v. Clayton*, 847 F.2d 1229 (7th Cir. 1988). There, the court held that physicians had a property interest in a "clean license." ***Fleury***, 847 F.2d at 1233. That court further held that a "formal censure" supported a procedural due-process claim. ***Id.*** Unfortunately for Rochling, in *Kloch* this court distinguished *Fleury*.[3] Specifically, the "formal censure" in *Fleury* was a "disciplinary action," which could have serious repercussions. ***Kloch***, 545 F.3d at 608. The "letter of concern" in *Kloch*, on the other hand, was available to the public, but was advisory in nature. ***Id.*** The letter itself could not result in adverse action – the state would have to take formal disciplinary action on its own. ***Id.***

While the NPDB report, like the *Fleury* censure, is a formal step that could ultimately carry serious professional repercussions, the NPDB report by itself is not a "rebuke[]" "censuring or reprimanding" Rochling. *See **Fleury***, 847 F.2d at 1232. Instead, the report simply means that a payment was made "for the benefit of" Rochling. The official purpose of the report is to disclose information, not to reprimand. The VA is required to submit a copy of all NPDB reports "to the State Licensing Board where the practitioner holds a license, and to the State Licensing Board in which the facility is located." **38 C.F.R. § 46.3(d)**. A state may use the

---

[3]This court distinguished *Fleury* based on the factual qualities of the "formal censure" versus the "letter of concern." *Fleury* is also legally distinguishable. This court has not adopted the "clean license" standard, nor does it do so here.

NPDB report to take formal disciplinary action but, as in *Kloch*, it is up to the state to take that step. If Rochling had pled that a state licensing board is required to reprimand a practitioner upon receiving an NPDB report, then an NPDB report might constitute the inevitable equivalent of a formal censure. Rochling did not plead any consequences beyond making the report available. If anything, the injury in this case is *less* severe than in *Kloch*, where the letter of concern was available to the general public – here, the NPDB report is not available to the general public. *See* **42 U.S.C. § 11137**. Rochling's allegations of "exponential harm" are speculative and conclusory. Because he has failed to plead the deprivation of a constitutionally protected interest, the district court did not err by dismissing the procedural due-process claim.

## B.

"[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." **Gallagher v. Magner**, 619 F.3d 823, 840 (8th Cir. 2010) (alteration in original), *quoting* **Myers v. Scott Cnty.**, 868 F.2d 1017, 1018 (8th Cir. 1989). The VA's conduct "must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity." **Brown v. Nix**, 33 F.3d 951, 953 (8th Cir. 1994), *citing* **Weimer v. Amen**, 870 F.2d 1400, 1405 (8th Cir. 1989). "To prevail on this claim, [Rochling] must show a constitutionally protected property interest and that [VA] officials used their power in such an arbitrary and oppressive way that it shocks the conscience." **Gallagher**, 619 F.3d at 840 (internal quotation marks omitted), *quoting* **Entergy, Ark., Inc. v. Nebraska**, 241 F.3d 979, 991 (8th Cir. 2001).

Substantive due process may be implicated if the government imposed "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." **Roth**, 408 U.S. at 573-74 (1972). The Sixth Circuit has rejected that an NPDB report raises due-process concerns because the doctor was "not

barred from practicing medicine generally." ***Benjamin v. Brachman***, 246 Fed. Appx. 905, 919 (6th Cir. 2007). Similarly, Rochling did not allege that he would lose his job, be unable to find another, effectively be barred from practice, etc.[4] *See also **Ming Wei Liu v. Bd. of Trs. of Univ. of Ala.***, 330 Fed. Appx. 775, 780 (11th Cir. 2009) ("claimant must present evidence suggesting that a governmental act effectively banned him or her from a profession"); ***Bordelon v. Chi. Sch. Reform Bd. of Trs.***, 233 F.3d 524, 537 (7th Cir. 2000) ("employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field" (citations and internal quotation marks omitted)).

Rochling's allegations of "truly egregious" behavior are far from those necessary to "shock the conscience." Throughout his brief, Rochling complains of not being told about the claim before settlement. None of Rochling's interests, however, were at stake when the VA decided whether to settle. The VA was not obligated to notify Rochling of the claim or the settlement. He also criticizes the finding that the settlement was for his benefit, because he did not perform the surgery. The VA's reports indicate, however, that he was not held responsible for any surgical errors. Rather, the panel determined that "the failure of the attending Gastroenterologist to work this patient up for common bile duct injury or obstruction by performing a repeat ERCP was inappropriate."

Because Rochling's pleadings are insufficient, the district court did not err by dismissing his substantive due-process claim.

---

[4]Rochling argues that *Benjamin* is distinguishable because it was decided on summary judgment. Not so. This court is following the standard in *Benjamin*. While that court analyzed it in the context of the evidence available at summary judgment, this court looks only at Rochling's pleadings.

III.

Rochling's remaining claims are impacted by the standard of review for the agency's actions. Rochling argues for de novo review. The district court disagreed, applying arbitrary and capricious review. This court engages in an independent review of the district court's selection of the standard for evaluating agency action. *See Nesseim v. Mail Handlers Ben. Plan*, 995 F.2d 804, 807 (8th Cir. 1993). The district court's determination was correct.[5]

De novo review of an agency action is available in only two scenarios: "First, . . . when the action is adjudicatory in nature and the agency factfinding procedures are inadequate[; and second], . . . when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). The first situation

---

[5]The district court made this determination twice. First, during the motion to supplement the record, the magistrate judge recommended denial of Rochling's request for de novo review:

> Plaintiff's arguments about the insufficiency of the review process go to the heart of his APA claim – that the VA did not properly investigate or provide notice of the malpractice claim and, as a result, wrongfully determined that the settlement was for Plaintiff's benefit. It would be improper for the court to, in effect, decide these issues through a motion to supplement the record. Plaintiff is not entitled to de novo review.

*Rochling v. Dep't of Veterans Affairs*, 2011 WL 5523556, at *3 (D. Neb. Sept. 27, 2011), *adopted*, 2011 WL 5525342, at *2 (D. Neb. Nov. 14, 2011). On summary judgment, the court performed a detailed analysis of the standard of review, rejecting Rochling's request for de novo review. This court need not explore the implications of evaluating the standard of review during a motion to supplement the record. At all times, de novo review was not warranted, so both conclusions of the district court were correct.

-10-

is relevant here, as both parties agree that the VA's action is adjudicatory. Rochling alleges that the VA's factfinding procedures were inadequate for four reasons.

First, Rochling argues that the VA panel "found that the settlement had been for the benefit of Dr. Rochling while disregarding the actual reasons for the settlement." He claims the panel ignored (or was not aware of) the surgical complications affecting the patient. This criticism attacks the merits of the VA's decision, not its factfinding *procedures*. Nevertheless, the panel was aware of the surgery as it was included in the medical record as well as in Rochling's report. The panel's decision was "[b]ased on a review of the medical record as well as any additional information submitted by practitioners." Further, Rochling was not responsible because he negligently performed a procedure. Rather, he failed to correctly diagnose the patient and failed to perform the very procedure recommended for the patient.

Second, Rochling says he "was not given notice of the claim, and once the claim was settled, he was not afforded sufficient notice of the allegations against him or an opportunity to address them." He contends it is unfair that he was not given notice of the claim until a year after the settlement. Rochling cites no authority that he should have received notice earlier. In fact, the pertinent regulation states that the "notice from the VA facility director will indicate that VA is considering whether to report the practitioner to the National Practitioner Data Bank because of a specified malpractice payment *made* . . . ." **38 C.F.R. § 46.3(b)** (emphasis added). The regulation contemplates that notice occurs *after* a payment is made – exactly what happened here.[6]

---

[6]Rochling correctly notes that the VA subsequently changed its procedure to require that notice be given to a practitioner within 30 days of a malpractice claim. *See* **Notification of Medical Malpractice (Tort) Claims Against Licensed Practitioners**, **VHA Directive 2009-032**, ¶ 3 (July 15, 2009), *available at* http://www1.va.gov/vhapublications/ViewPublication.asp?pub_ID=2046. It is

-11-

Third, Rochling alleges the VA's factfinding was improper because he was not given the opportunity to respond to the statements of other physicians, specifically Dr. Robert E. Fox, Jr., and Dr. Richard R. Jesudass. Again, Rochling does not point to any regulation giving him the right to do so. The regulation obligates the VA to "provide the practitioner the opportunity, within 60 days of receipt [of notice], to submit a written statement concerning the care that led to the claim." *Id.* Rochling took advantage of this opportunity. Fox and Jesudass also submitted letters, and the panel made its decision based on these reports and other available information. Moreover, while Fox and Jesudass did blame the physicians at Little Rock, Rochling similarly blamed other doctors. The relevant professionals had the opportunity to present their version of the events, and the panel made its decision accordingly.

Fourth, Rochling argues that the review panel should have contained a gastroenterologist or hepatologist. The three-member panel was composed of three physicians, one being a board-certified general surgeon experienced in laparoscopic cholecystectomy. The review panel should "includ[e] at least one member of the profession/occupation of the practitioner(s) whose actions are under review." *Id.* The Veterans Health Administration Handbook explains this requirement:

> The panel must consist of, at a minimum, three off-station reviewers who are health care professionals, including at least one reviewer who is a member of the profession or occupation of the practitioner(s) represented in the case and/or claim under review.

**VHA Handbook 1100.17 § 5.b.(4)(a)** (Nov. 13, 2002). Rochling contends that because all of the members are "health care professionals," then "member of the profession" must mean a specialist. "Health care professional," however is broader

---

undisputed that this change postdated the agency's review, and this court follows the policy in place at the time of the challenged agency action. *Cf. **Utah Envtl. Cong. v. Bosworth**, 372 F.3d 1219, 1221 n.1 (10th Cir. 2004).*

than only doctors, and includes, *inter alia*, dentists, nurses, and any licensed professional. *See, e.g.*, *Id.* § 1 ("The purpose of this Veterans Health Administration (VHA) Handbook is to provide required procedures for heath care facilities on reporting information to the National Practitioner Data Bank (NPDB) regarding *physicians, dentists and other licensed health care professionals*." (emphasis added)); ***Am. Fed'n of Gov't Emps., Local 3884 v. FLRA***, 930 F.2d 1315, 1318 (8th Cir. 1991). This court agrees with the district court that the VA's determination was reasonable. Further, it is supported by supplementary authorities. The VHA Handbook's appendix says:

> Upon receipt of the material from the facility director's designee, the Office of the Director, Medical-Legal Affairs must assign a minimum of three providers to be panelists. All panels must include a member of the same profession of the individual whose practice during an episode of care is being reviewed. Other types of professionals will be appointed as necessary. When the review of the episode of care requires knowledge of a specific surgical technique, or of a medical judgment requiring a specific cognizant function, the panel may request a consultation from an appropriate specialist.

*Id.* **app. C § 10**. This confirms that specialists are not required on the review panel. When necessary, the panel may consult them. Here, the panel even re-reviewed the case to determine whether a specialist was necessary, and concluded it was not. Additionally, the VA, in its notice-and-comment discussion about panel review indicates that a specialist is not required:

> The medical school representative asserted that the review panel should consist only of members having the same area of expertise as the practitioner in question "or, in the alternative, only panel members having such expertise be allowed to vote." No changes are made based on these comments. Based on a review of the more than 1,100 paid claims that have been considered by a review panel since 1997, we have concluded that the overwhelming majority of claims do not include

issues requiring such specialized expertise. Further, the regulations at § 46.3(b) allow for the review panel to obtain and consider opinions of experts as needed.

**Policy Regarding Participation in National Practitioner Data Bank**, 67 Fed. Reg. 19,678, 19,679 (Apr. 23, 2002) (final rule) (supplementary information). Rochling seizes on the words "consist only of" and argues that this statement forecloses only the possibility of *all* panel members being of the same specialty. However, this court agrees with the district court that, taken with the other regulations, the discussion supports the VA's reasonable interpretation that a specialist was not required on the panel.[7]

The VA's factfinding procedures were adequate, and the district court properly rejected de novo review.

## A.

The district court denied Rochling's request to supplement the administrative record. That decision is "entitled to deference 'absent a gross abuse of discretion.'" *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004), *quoting Tenkku v. Normandy*, 348 F.3d 737, 743 (8th Cir. 2003). Because de novo review does not apply, Rochling's ability to conduct additional discovery is very limited. "It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Id.*, *citing Overton*

---

[7]Rochling notes that the VHA Handbook has been amended to require a member of the same speciality on the panel. *See* **VHA Handbook 1100.17 § 8.g.(1)** (Dec. 28, 2009), *available at* http://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2135. It is undisputed that this amendment postdated the agency's review, and this court follows the policy in place at the time of the challenged agency action. *Cf.* **Utah Envtl. Cong. v. Bosworth**, 372 F.3d 1219, 1221 n.1 (10th Cir. 2004).

***Park***, 401 U.S. at 420, ***Fla. Power & Light Co. v. Lorion***, 470 U.S. 729, 743-44 (1985), *and* ***Newton Cnty. Wildlife Ass'n v. Rogers***, 141 F.3d 803, 807 (8th Cir. 1998). "By confining judicial review to the administrative record, the APA precludes the reviewing court from conducting a de novo trial and substituting its opinion for that of the agency." ***Id.***, *citing* ***United States v. Morgan***, 313 U.S. 409, 422 (1941).

> [C]ertain exceptions have been carved from the general rule limiting APA review to the administrative record. These exceptions apply only under extraordinary circumstances, and are not to be casually invoked unless the party seeking to depart from the record can make a strong showing that the specific extra-record material falls within one of the limited exceptions. *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436-38 (9th Cir. 1988). When there is "a contemporaneous administrative record and no need for additional explanation of the agency decision, 'there must be a strong showing of bad faith or improper behavior' before the reviewing court may permit discovery and evidentiary supplementation of the administrative record." *Newton*, 141 F.3d at 807-08 (quoting *Overton Park*, 401 U.S. at 420).

***Id.***

There is a contemporaneous administrative record in this case that provides sufficient explanation for the VA's decision. The explanation need only be sufficient to allow judicial review. *See* ***Madison Cnty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.***, 622 F.2d 393, 396, 397 (8th Cir. 1980) (a resolution that "merely states that the regulatory criteria were met" satisfies this requirement because it allows a court to "examine the record to see if it . . . provides a rational basis for the agency's choice"). The agency's decision here does much more, explaining the specific grounds for the decision and the specific evidence relied on. The decision and record here are sufficient for judicial review and the district court did not grossly abuse its discretion in denying the motion to supplement.

Rochling's specific attacks on the administrative record are similarly unavailing. First, he requests information about the settlement of the malpractice claim, including the settlement itself and the facts considered. This is foreclosed by the relevant regulation:

> The conclusions of the panel shall, at a minimum, be based on review of documents pertinent to the care that led to the claim. . . . These documents do not include those generated primarily for consideration or litigation of the claim of malpractice.

**38 C.F.R. § 46.3(b)**.

Rochling also argues that the VA did not obtain statements from all the treating physicians. Other doctors interacted with the patient while at the Little Rock VA, yet the VA obtained only Rochling's statement from the team of treating physicians at that hospital. "The conclusions of the panel shall, at a minimum, be based on review of documents pertinent to the care that led to the claim. . . . [T]o the extent practicable, the documents shall include written statements of the individual(s) involved in the care which led to the claim." *Id.* This court agrees with the district court that the VA did not abuse its discretion by not obtaining additional reports. The claim was based on surgical clips left in a patient and the subsequent failure to diagnose the problem through ERCP. The panel had statements from the physicians responsible for those acts, fulfilling the requirement for "written statements of the individual(s) involved in the care *which led to the claim*." (emphasis added). *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation").

The district court did not grossly abuse its discretion by denying Rochling's motion to supplement the record.

B.

Rochling argues that the district court improperly granted the defendants' motion for summary judgment. "This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 670 (8th Cir. 2013), *quoting* *Gen. Mills Operations v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

This court reviews the "district court's summary judgment decision de novo, applying the same standards as those applied by the district court." *Cent. S.D. Coop. Grazing Dist. v. Sec'y of U.S. Dep't of Agric.*, 266 F.3d 889, 894 (8th Cir. 2001). The VA's decision will be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." **5 U.S.C. § 706(2)(A)**.

> As the reviewing court, we engage in a substantial inquiry, based on an examination of the administrative record, in order to answer three questions: (1) whether the [agency] acted within the scope of [its] authority, *Overton Park*, 401 U.S. at 415; (2) whether the decision was "based on a consideration of the relevant factors," *id.* at 416; and (3) whether the [agency] "follow[ed] the necessary procedural requirements." *Id.* at 417.

*South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, 799 (8th Cir. 2005) (final alteration in original). "A decision is arbitrary or capricious if 'the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs contrary to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Friends of*

-17-

***Boundary Waters Wilderness v. Bosworth***, 437 F.3d 815, 822 (8th Cir. 2006), *quoting **Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.**,* 463 U.S. 29, 43 (1983).

Rochling contends that the VA acted arbitrarily and capriciously by not considering his expert reports. He emphasizes that the panel's re-review took place on August 11, 2004, and the report says it was made "in light of all the additional information provided." That is impossible, according to Rochling, because his experts' reports were not submitted until September 15 and October 6. A careful review of the record, however, shows that the board reviewed all necessary information. After Rochling received the panel's initial decision, his attorney sent a letter on July 30 to the VA, requesting re-review of the case, specifically stating: "I would request that the report to the Data Bank be delayed until such time as Dr. Rochling and myself have an opportunity to examine the Panel report in more detail and perhaps submit an outside consultant's review." This letter also set out sections of the VHA Handbook that Rochling asserts entitled him to a specialist on the panel.

In a follow-up letter on August 6, Rochling's attorney said: "We are willing to go to the expense of providing the panel or a replacement panel with the opinions of one or more consultants in an effort to be certain that the decision is correct." The VA's response on August 11 said:

> The Director of Medical Legal Affairs was contacted and he indicated that the panel requirements set forth in the VA regulations had been met. He is willing to ask the panel to re-review this case *to determine the possible need for further review by a medical sub-specialist.*

(emphasis added). The VA never requested expert reports or indicated a willingness to review them. Rather, the panel would re-review to decide if expert opinions were necessary. The panel then re-affirmed its decision, stating:

Based on a re-review of this case on August 11, 2004, in light of all of the additional information provided, the Panel reaffirmed its initial conclusion that this patient received substandard care and again identified **Fedja A. Rochling, M.D., Bch.**, as the responsible practitioner.

Rochling assumes "additional information" is referring to the expert reports, but "additional information" could also reference the information provided by the attorney, specifically, the citation and discussion of the VHA Handbook provisions. Any failure to review was not arbitrary or capricious.

Next, Rochling argues that the decision is in error because it settled the claim before notifying him, and did not give him the opportunity to respond to the letters of other doctors. As discussed, no authority supports either argument. The evidence in the record supports the panel's decision.

Rochling also asserts the panel's action is not in accordance with law because the VA failed to follow its own rules. Specifically, he reiterates that a specialist was required on the panel. As discussed, this is not required. The VA stated its position in its August 11 letter: "As a matter of record, general surgeons throughout the VA Healthcare System may be privileged to perform ERCP's and therefore are familiar with indications or contraindications of the same." *Cf. **Poche v. Joubran***, 389 Fed. Appx. 768, 773-74 (10th Cir. 2010) (general surgeon permitted to testify as to whether an ERCP was necessary).

Rochling claims the VA also failed to follow its own rules by not obtaining written statements from additional physicians. As discussed, this court agrees with the district court that the VA did not abuse its discretion in reviewing written statements from the three doctors involved in the care which led to the claim. Further, to the extent the VA did not follow its own regulation on written statements, Rochling failed to show substantial prejudice. True, some agency rules do not require

-19-

a showing of prejudice to warrant judicial review. *See, e.g.*, **Lopez v. FAA**, 318 F.3d 242, 247 (D.C. Cir. 2003). Other circuits have held that if the regulation is "promulgated to protect a fundamental right derived from the Constitution or a federal statute," and the agency does not abide by it, remand is required. **Waldron v. INS**, 17 F.3d 511, 518 (2d Cir. 1993) (finding that two notice provisions in immigration regulations were not derived from a fundamental constitutional or statutory right, so a showing of prejudice was required); *see also* **Wilson v. Comm'r of Soc. Sec.**, 378 F.3d 541, 547 (6th Cir. 2004) (no showing of prejudice required when an ALJ violated a regulation by failing to give "good reasons" for not giving weight to a treating physician's disability determination).

The general framework is clear:

> The Supreme Court has . . . distinguished between the types of internal agency regulations that are reviewable. In *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970), a case involving regulations designed to provide the agency with information it needed to reach an informed decision, the Court held that the regulations were unreviewable absent a showing of substantial prejudice by the complaining party. On the other hand, had the agency's rules been "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion as in *Vitarelli*," *id.* at 538-39, or had the agency failed to exercise independent discretion required by the rule, as in *Accardi*, *id.* at 539, the Court indicated the case would be "exempt" from the general principle that an administrative agency may "relax or modify its procedural rules adopted for the orderly transaction of business . . . when . . . the ends of justice require it." *Id.*

*Lopez*, 318 F.3d at 247. In this case, the requirement for the panel to obtain "written statements of the individual(s) involved in the care which led to the claim"– "to the extent practicable" – falls into the first category: a regulation "designed to provide the agency with information it needed to reach an informed decision." **Id.** "The rule[]

-20-

w[as] not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." **Am. Farm Lines v. Black Ball Freight Serv.**, 397 U.S. 532, 538 (1970).

This case is significantly different than *Vitarelli v. Seaton*, 359 U.S. 535 (1959), namely due to the absence of "otherwise unfettered [agency] discretion." In *Vitarelli*, the petitioner was terminated from his job with the Department of the Interior on national security grounds. **Vitarelli**, 359 U.S. at 539. Although the Secretary of the Interior had the power to discharge summarily employees holding the petitioner's type of job – in other words, the Secretary generally had complete discretion to take the contested action – the Secretary had promulgated special procedural rules governing the dismissal of employees on national security grounds. Without these rules, the Secretary's "otherwise unfettered discretion" would govern. Because the Secretary had not followed these rules in the petitioner's case, the Court held that the petitioner was entitled to reinstatement, without any showing of substantial prejudice from the procedural violation. In contrast, the particular rule the agency allegedly violated during the course of Rochling's review is hardly the lone bulwark against otherwise unfettered agency discretion. The VA faces significant other constraints when investigating and submitting NPDB reports. *See* **38 C.F.R. § 46.3(a)** (requiring the VA to collect and include in its report to the NPDB a specified list of information); **§ 46.3(b)** (defining when a payment was "made for the benefit of" a practitioner, imposing constraints on the professional qualifications of individuals who may serve on a review panel, requiring the panel to consider certain types of documents when reaching its conclusion, and requiring the practitioner to be given notice and an opportunity to be heard). Further, this case is distinguishable from Social Security cases such as *Wilson* because those hearings touch upon what is recognized as a property interest in the continued receipt of benefits, whereas Rochling failed to plead the deprivation of a "legitimate claim of entitlement."

Therefore, Rochling would be required to show substantial prejudice, which he has failed to do. The panel found that the settlement was for the benefit of Rochling because he failed to properly diagnose and perform a second ERCP. His own notes, the medical records, and other evidence before the panel support this conclusion. The panel based its decision on "a review of the medical record as well as any additional information submitted by practitioners involved in this case."

The VA's decision was not arbitrary or capricious, and the district court did not err by granting summary judgment.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____