# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3463

_____

John McClung; Kim McClung

*Petitioners - Appellants*

v.

Colonel Courtney W. Paul, in his official capacity as District Engineer, Little Rock
District, U.S. Army Corps of Engineers; United States Department of the Army

*Respondents - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: April 13, 2015
Filed: June 8, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

MURPHY, Circuit Judge.

John and Kim McClung bought a vacation home next to Greers Ferry Lake and
received a permit to maintain a boat dock and stone steps on the public land between
their property and the lake. The lake and shoreline area is federal government
property managed by the Army Corps of Engineers. The Corps twice sanctioned the
McClungs for violating permit conditions and regulations, first for causing herbicide

to be sprayed on public property and then for removing brush from the previously sprayed land. In its final sanctions order the Corps revoked the McClungs' permit for the dock and steps. The McClungs challenged this administrative decision in federal court. The district court[1] determined that the sanctions were not arbitrary and capricious and did not violate due process. The McClungs appeal, and we affirm.

## I.

## A.

The Army Corps of Engineers manages federal water resource development projects such as Greers Ferry Lake under 16 U.S.C. § 460d, part of the 1944 Flood Control Act. Regulations governing public use of such federal water resources are found in 36 C.F.R. pt. 327. No private structure may be located on public lands or waters without a permit, and removal or alteration of public property (including vegetation) is prohibited without written permission. 36 C.F.R. §§ 327.14, 327.20, 327.30(f)(1). The Corps issues permits for private shoreline use in accordance with the Shoreline Management Plan (SMP) for each project. 36 C.F.R. §§ 327.19(e), 327.30(d)(2)-(3). The Corps district commander may revoke permits "when it is determined that the public interest requires such revocation or when the permittee fails to comply with terms and conditions of the permit [or] the Shoreline Management Plan." 36 C.F.R. § 327.30, app. A(3).

In 2010, the McClungs purchased a vacation property in Heber Springs, Arkansas which is adjacent to the government owned shoreline of Greers Ferry Lake. The prior owner of this property had received a permit from the Corps allowing a boat dock and a set of stone steps on the lakeshore. Such permits are nontransferable and

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

are voided upon the sale of the property. 36 C.F.R. § 327.30(g). Before obtaining their own permit, the McClungs met with Ranger Gary Ivy in September 2011 and were informed of permit procedures and regulations. The McClungs applied for a shoreline use permit for the dock and steps, and the Corps issued such a permit on January 4, 2012.

The permit issued to the McClungs stated that one of its conditions was compliance "with all applicable provisions of 36 C.F.R., ch.3, part 327 and the Greers Ferry Shoreline Management Plan." Violation of permit conditions may be punished by revocation of the permit. 36 C.F.R. § 327.30, app. A(3). Specific shoreline use permit conditions from 36 C.F.R. § 327.30, app. C were printed on the back, including condition 18: "No vegetation other than that prescribed in the permit will be damaged, destroyed or removed. No vegetation of any kind will be planted, other than that specifically prescribed in the permit." Sections 8-01 and 8-02 of the Greers Ferry SMP authorize permits for certain types of vegetation modification including removal of underbrush within 50-100 feet of a residence, but the use of chemicals for vegetation modification is prohibited. The McClungs received a "mowing permit" with a map specifying the area within 100 feet of their home where vegetation modification was permitted.

On June 4, 2012, Ranger Ivy investigated a vegetation kill on the shoreline between the McClungs' property and the lake. He determined that 8,400 square feet of federal land had been sprayed with herbicide and that the width of the affected area was approximately the same as the width of the McClungs' lot. The area sprayed with herbicide was not part of the McClungs' mowing permit area. When Ivy contacted John McClung, McClung explained that he had hired someone to spray his property and that person must have mistakenly sprayed the public property. The administrative record contains a memo from Ivy describing this investigation and pictures he took of the affected land.

-3-

The Corps determined that the herbicide spray violated the conditions of the McClungs' shoreline use permit. An internal Corps memorandum included in the administrative record shows that the Corps considered a fine of $75 or $250 as possible sanctions. However, the operations project manager recommended that Colonel Masset[2] instead revoke the McClungs' permit in its entirety for this herbicide violation. The memorandum expresses concern that a small fine would "establish[] precedence that it is 'ok' to violate the terms and conditions of permits" and could "lead to additional violations by neighbors" who might decide that it is worth paying a fine to get a better view of the lake. This internal memorandum acknowledged that revoking the permit for this first time violation "may be seen as punitive . . . [but this] is the way of the future. Somebody has to be first. It is not out of our authority to take this action, . . . just out of the norm."

Partially adopting the recommendation from this memorandum, Colonel Masset decided to restrict any use of the McClungs' boat dock for two years and to terminate the permit for the stone steps. A letter informed the McClungs of this sanction. It stated that they had violated 36 C.F.R. § 327.14(a), which prohibits "[d]estruction, injury, defacement, removal or any alteration of public property including . . . vegetative growth," permit conditions found in 36 C.F.R. § 327.30, and the prohibition on the use of chemicals for vegetation modification found in Greers Ferry SMP, § 8-02(c). The McClungs would be required to remove the steps or to pay for their removal. The letter also instructed that the McClungs "must immediately cease mowing on public property."

---

[2]At the time, Colonel Glen A. Masset was the Corps District Engineer for the area including Greers Ferry Lake.

-4-

B.

The McClungs sought and Colonel Masset granted a stay of the requirement that they remove the stone steps so they could pursue an internal appeal. They subsequently submitted an appeal to the Corps and requested a hearing. Included with the appeal was a letter from engineer Don Potter which stated that he had examined the steps and had concluded that their removal could have negative environmental effects such as erosion.

Before the hearing on this internal appeal, Ranger Ivy discovered on January 16, 2013 that the McClungs had cleared the remaining live and dead vegetation from the previously sprayed shoreline area. Colonel Masset was notified about Ivy's discovery, and photos showing some vegetation regrowth on October 4, 2012 and the bare shoreline on January 16, 2013 were included in the administrative record. Colonel Masset sent a second violation letter to the McClungs stating that their consolidated dock and steps permit was permanently revoked due to "repeated violations" of 36 C.F.R. § 327.14 and permit conditions found in 36 C.F.R. § 327.30, app. C, including the prohibition on vegetation modification found in condition 18.

At a hearing on March 28, 2013 before Colonel Masset, the McClungs admitted that they had cleared shoreline vegetation but said that they did so because they wanted to rectify the herbicide damage by replanting the area. No transcript was made of the hearing. The McClungs allege that Colonel Masset commented that he "was seen as too lenient on other violators" and that prior violators "got away with improving the value of their land for insignificant monetary punishment." They also claim that they explained to Colonel Masset that they had removed the brush by hand, not with machines, and argued that therefore no "mowing" had occurred. Included in the administrative record is a receipt the McClungs provided from a nursery and landscaping company as proof of their intent to replant the area and their proposed settlement which would have involved a fine and required them to pay for

-5-

remediation of the shoreline. The McClungs had never obtained permission from the Corps to plant anything on public lands.

The Corps issued a final administrative order on April 11, 2013 revoking the McClungs' permit for the boat dock and stone steps. The order included factual findings that the McClungs were responsible for the initial herbicide spray and that they had later returned to the same area "and mowed the remaining and recovering vegetation that had not been killed earlier by the herbicide." It stated that these actions violated 36 C.F.R. § 327.14(a) and Greers Ferry SMP § 8-02. The order listed several reasons for imposing permit revocation as the penalty. The McClungs had been made aware of applicable regulations and the August 7 violation letter had instructed them to "cease mowing on public property." Rather than heeding this warning, "McClung blatantly disregarded the letter by proceeding to mow [federal government] property . . . despite its owner's direct prohibition against such action." The Corps concluded that no lesser penalty would be appropriate because "[s]uch behavior is not demonstrative of either remorse or understanding, but rather an inability to acknowledge the fundamental integrity of government property."

C.

On May 10, 2013, the McClungs petitioned for review of this final administrative order in the Eastern District of Arkansas under the Administrative Procedures Act, 5 U.S.C. §§ 701-06. The McClungs claimed that the decision to revoke their permits was arbitrary and capricious and that their constitutional right to due process had been denied. They moved to supplement the administrative record, arguing that it was inadequate because it lacked a transcript of the proceeding before Colonel Masset and that additional information about prior sanctions decisions was necessary. The Corps opposed this motion and also moved to strike exhibits to the McClungs' district court briefs which were not part of the administrative record.

The district court denied the McClungs' motion to supplement the record, granted the Corps' motion to strike, and denied the petition for review. The McClungs appeal.

## II.

### A.

The McClungs challenge the district court denial of their motion to supplement the record. Judicial review under the Administrative Procedures Act is ordinarily "limited to the administrative record that was before the agency when it made its decision," precluding a court from "conducting a de novo trial and substituting its opinion for that of the agency." Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004). If the contemporaneous administrative record leaves "no need for additional explanation of the agency decision," a party petitioning for review must make a "strong showing of bad faith or improper behavior" before a court will allow supplementation of the record. Id. (quotation omitted). The McClungs argue that they have made a showing of bad faith or improper behavior because statements made by Colonel Masset show that he was biased against them and because the record fails to explain the administrative decision. They contend that the record is deficient because the administrative proceedings were "irregular," specifically citing the fact that no transcript was made of the hearing before Colonel Masset and suggesting that the final agency decision was arbitrary rulemaking.

The district court denial of the motion to supplement the record is "entitled to deference absent a gross abuse of discretion," Voyageurs National Park, 381 F.3d at 766 (quotation omitted), and there was no abuse of discretion here. The record adequately explains the basis for the decision to revoke the permits: the Corps had concluded that the McClungs twice violated 36 C.F.R. § 327.14(a) and other permit conditions by causing herbicide to be sprayed on public property and by later removing vegetation from the same area. Documents in the record showing the basis

for this decision include Colonel Masset's decision letters, internal memoranda, Ranger Ivy's documentation of the violations, and records of a comparable sanction decision. Statements Colonel Masset allegedly made at the hearing do not show bad faith or bias. The McClungs have not presented any authority showing that an informal hearing was improper under the circumstances. Regulations describing procedures for permit revocation require a hearing upon the permittee's request, but they do not include substantive requirements for the hearing such as the creation of a transcript. See 36 C.F.R. § 327.30, app. C ¶ 21. While the McClungs suggest that the agency action was rulemaking, they do not identify any new rule created, and the final order simply applied already existing regulations and permit conditions. The district court did not err in determining that supplementation of the record was unwarranted in this case.

The McClungs also argue that the district court should have granted their request to supplement the record because the administrative decision did not include a statement addressing the environmental consequences of removing the stone steps as required by the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA). NEPA environmental impact statement requirements apply to "proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). They do not apply to this case because nothing in the record nor any of the additional exhibits submitted by the McClungs show that the revocation of their shoreline use permit was a major federal action.

B.

The McClungs argue that the district court should have set aside the Corps' decision as arbitrary and capricious. See 5 U.S.C. § 706(2)(a). Our review of the district court decision that the Corps' order did not violate the Administrative

Procedures Act is de novo. Friends of the Norbeck v. U.S. Forest Serv., 661 F.3d 969, 975 (8th Cir. 2011). A decision is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The McClungs first claim that there was "no evidence" of a second violation since the Corps did not show they had "mowed" the brush rather than removing it by hand. The final administrative order stated that they violated 36 C.F.R. § 327.14(a) and the Greers Ferry SMP when they "mowed the remaining and recovering vegetation that had not been killed earlier by the herbicide." In its briefing to this court, the Corps explained that it uses the word "'mow' as a general term to address various types of vegetation control and removal." This definition finds support in the administrative record. The McClungs received and applied for a "mowing" permit that allowed them to "mow" an area up to 100 feet from the northwest corner of their home. This permit complies with the terms of § 8-02(a) of the Greers Ferry SMP, which describes permits for "underbrushing" vegetation modification within up to 100 feet of a habitable structure. It thus appears that as used by the agency, the term "mowing" is not necessarily confined to lawn mowing or the use of other machines and may include removal of brush by hand. The use of the term "mowing" alone does not show that the final order was unsupported by the record.

Moreover, it is clear that the McClungs violated regulations and permit conditions whether or not they used machinery to remove brush. They admit that they cleared vegetation by hand and they do not claim to have had a permit for that. Pictures included in the administrative record show both dead and living vegetation

on the shoreline in October 2012 and almost all vegetation gone by January 2013. The record thus provides ample support for the determination by the Corps that the McClungs had violated permit conditions by "remov[ing] or . . . alter[ing] . . . public property including . . . vegetative growth," prohibited by 36 C.F.R. § 327.14(a), and by removing underbrush outside of a permitted area in violation of the SMP. Either violation is punishable by revocation under the terms of the permit.

Next the McClungs contend that the agency considered an irrelevant factor, deterrence, and failed to consider an important factor, the intent of the SMP to preserve shoreline ecology. Although Colonel Masset's decisions did not cite "deterrence," the administrative record shows that an internal Corps memorandum regarding the first violation weighed the possibility that a lighter sanction would "establish[] precedence that it is 'ok' to violate the terms and conditions of permits" and might "lead to additional violations by neighbors." These are not inappropriate considerations. Congress has charged the Corps with the responsibility to maintain and regulate water resource development projects in accordance with "the public interest." 16 U.S.C. § 460d. Consistent with this Congressional policy, the Corps could consider whether a particular sanction would be enough to discourage future violations of regulations promulgated under the authority of 16 U.S.C. § 460d or even encourage violations were it perceived as an insignificant penalty.

Assuming that the intent of the SMP is an important aspect of the overall situation which the Corps must consider, the record indicates that it was taken into account in the Corps' sanction decision. The prohibitions against vegetation modification which the McClungs violated are closely related to the preservation of shoreline ecology. The McClungs argue that the Corps did not adequately consider shoreline preservation because engineer Don Potter opined that removing the stone steps could have negative environmental effects such as erosion. While the letter from Potter was presented to Colonel Masset, the record suggests that the Corps preferred to allow the land to be restored to its natural state. The Corps could take

a different view of what would be best for shoreline ecology without rendering its decision arbitrary and capricious.

Finally, the McClungs argue that the sanctions imposed are so irrationally disparate in comparison to similar violations that the Corps' action was arbitrary and capricious. An agency's choice of sanction is entitled to substantial deference, and the imposition of a sanction within an agency's authority is not necessarily "rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." Butz v. Glover Livestock Comm'n Co., Inc., 411 U.S. 182, 187 (1973). The only comparison case in the record does not demonstrate that the McClungs were treated more harshly than others. In that case, a homeowner who sprayed herbicide on 1,750 square feet of public property was prohibited from using his boat dock for two years. That sanction is similar to the one imposed for the McClungs' first violation. There is no case offered for comparison in which a permit holder committed two violations within one year like the McClungs did. On this record, the severity of the sanctions imposed on the McClungs does not show that the agency decision was arbitrary or capricious.

C.

The McClungs also challenge the procedures followed by the Corps, arguing that they lacked proper notice and an opportunity to respond in violation of 5 U.S.C. § 558(c) and their constitutional right to due process. They failed to raise the § 558(c) argument in the district court. Since we generally do not consider issues first raised on appeal and the McClungs have not shown that injustice would result from failing to consider this issue, their argument based on § 558(c) is waived. Syverson v. U.S. Dep't of Agric., 601 F.3d 793, 803 (8th Cir. 2010).

There was no constitutional due process violation in this case because the McClungs did not have a property interest in their shoreline permits. In order to have

-11-

a cognizable property interest, a person must "have a legitimate claim of entitlement to it" derived from a source outside of the Constitution. <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972). No statute or regulation requires the Corps to authorize private use of publicly owned shorelines. Shoreline use permits "do[] not convey any real estate or personal property rights or exclusive use rights to the permit holder," 36 C.F.R. § 327.30(d)(5), and the Corps has broad discretion to manage and regulate water resources and to revoke permits as the public interest requires, 16 U.S.C. § 460d; 36 C.F.R. § 327.30, app. A(3). The statutes and regulations applicable to shoreline use permits thus do not create a property interest in these permits and the McClungs have not shown that some other source creates such an entitlement. Without a constitutionally protected interest at stake, there was no violation of the McClungs' due process rights. <u>See</u> <u>Rochling v. Dep't of Veterans Affairs</u>, 725 F.3d 927, 931 (8th Cir. 2013).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____